### BRADLEY v DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE

Docket No. 63539. Submitted March 10, 1983, at Lansing.—Decided October 25, 1983.

Charles L. Bradley was seriously injured when the motorcycle which he was operating struck the rear of a parked vehicle. The motorcycle was not covered by no-fault insurance. Bradley filed a claim for personal protection benefits under the policy of no-fault issued to his wife on her car by the Detroit Automobile Inter-Insurance Exchange (DAIIE), claiming that the accident resulted, at least in part, from the fact that an automobile being operated in the adjoining lane prevented Bradley from taking evasive action in order to avoid the parked vehicle. DAIIE denied the claim for benefits on the basis that the parked vehicle which Bradley struck was not unreasonably parked and, accordingly, pursuant to the parked vehicle exclusion, Bradley was not entitled to personal protection benefits. DAIIE failed to make any investigation with respect to the claim that the injuries resulted from the operation of the vehicle in the adjoining traffic lane. Bradley brought an action against DAIIE in Ingham Circuit Court to recover the personal protection benefits. Bradley moved for partial summary judgment on the issue of liability. Michael G. Harrison, J., granted that motion. Bradley sought an award of attorney fees on the basis that DAIIE was liable for such fees because it had

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 7 Am Jur 2d, Automobile Insurance §§ 129-133, 351 et seq.
   Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[2, 3] 7 Am Jur 2d, Automobile Insurance §§ 194 et seq., 353, 354.
   What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.
[4, 6] 7 Am Jur 2d, Automobile Insurance §§ 23, 344, 345.
[5, 9, 10] 5 Am Jur 2d, Appeal and Error § 820.
   7 Am Jur 2d, Automobile Insurance §§ 25, 344, 345.
[7] 7 Am Jur 2d, Automobile Insurance § 343 et seq.
[8] 7 Am Jur 2d, Automobile Insurance § 345.
[10] Automobile insurer's liability for statutory excess interest for delayed payment of no-fault claim. 14 ALR4th 761.

unreasonably refused to pay the claim in a timely fashion. Following a hearing on the reasonableness of the requested attorney fees, the trial court awarded attorney fees in the amount of one-third of the unpaid benefits. The court also awarded interest pursuant to the no-fault act from the date the payment of benefits became overdue. DAIIE appeals. *Held:*

1. Because the operation of the vehicle in the adjoining lane was a normal and foreseeable use of that vehicle as a motor vehicle and because such operation of that vehicle contributed in part to the accident which caused plaintiff's injuries, plaintiff's injuries arose out of the operation of a motor vehicle. Plaintiff, accordingly, was entitled to personal protection benefits under the no-fault insurance policy issued to plaintiff's wife.

2. The trial court properly determined that defendant unreasonably refused to pay plaintiff's claim and, accordingly, was liable pursuant to the provisions of the automobile no-fault insurance act for reasonable attorney fees incurred by plaintiff in seeking to recover the personal protection benefits. While defendant might have reasonably refused to pay this plaintiff's claim on the basis of a bona fide factual dispute had it investigated plaintiff's claim that the injuries resulted from the operation of the vehicle in the adjoining lane, defendant's denial of the claim on the basis of the parked vehicle exception without making any inquiry as to the possible involvement of the vehicle in the adjoining traffic lane was unreasonable.

3. The trial court's award as to the amount of attorney fees was not an abuse of discretion and, accordingly, will not be overturned on appeal. While the trial court ultimately used the contingent fee calculation to determine the attorney fees, it did so only after considering other factors relevant to the question of what would be reasonable attorney fees under the circumstances.

4. The trial court properly awarded interest from the date the payment of the claim became overdue. Such interest pursuant to the no-fault insurance act is proper even if the insurer withholds payment in good faith.

Affirmed.

1. I<small>NSURANCE</small> — N<small>O</small>-F<small>AULT</small> I<small>NSURANCE</small> — P<small>ERSONAL</small> P<small>ROTECTION</small> B<small>EN-</small>
     EFITS — C<small>AUSAL</small> C<small>ONNECTION</small>.

An injured person must establish a causal connection between the use of a motor vehicle and the injury in order to qualify for no-fault personal protection benefits for an injury "arising out of the use of a motor vehicle as a motor vehicle"; where use of the vehicle is one of the causes of the injury a sufficient causal

connection is established even though another independent cause exists (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT INSURANCE — MOTORCYCLES — PERSONAL PROTECTION BENEFITS.

A motorcyclist who is insured under an automobile policy may recover personal protection benefits for injuries suffered in an accident where there is a causal nexus between the accident and the ownership, operation, maintenance or use of a motor vehicle whether or not the motorcycle and the motor vehicle actually collided or touched (MCL 500.3105[1]; MSA 24.13105[1]).

3. INSURANCE — NO-FAULT INSURANCE — MOTORCYCLES — PERSONAL PROTECTION BENEFITS — CAUSAL CONNECTION.

Injuries to a motorcyclist are causally connected with the operation of an automobile within the meaning of the personal protection benefits provisions of the automobile no-fault insurance act where the motorcyclist's injuries resulted from a collision with a parked vehicle and the collision was caused, at least in part, by a moving vehicle in an adjoining traffic lane which prevented the motorcyclist from avoiding the parked vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

4. INSURANCE — NO-FAULT INSURANCE — OVERDUE BENEFITS — ATTORNEY FEES.

An insurer's refusal to make payments of automobile no-fault insurance benefits or its delay in making such payments is not unreasonable within the meaning of the attorney fees provisions of the automobile no-fault insurance act where the refusal or delay is the product of a legitimate question of statutory construction, constitutional law or bona fide factual uncertainty (MCL 500.3148[1]; MSA 24.13148[1]).

5. APPEAL — FINDINGS OF FACT — NO-FAULT INSURANCE — OVERDUE BENEFITS.

A trial court's determination that an insurer unreasonably refused to make payment of automobile no-fault insurance benefits or unreasonably delayed the making of such payments will not be disturbed on appeal unless the trial court's findings are clearly erroneous (GCR 1963, 517.1).

6. INSURANCE — NO-FAULT INSURANCE — OVERDUE BENEFITS — ATTORNEY FEES — FINDINGS OF FACT.

A trial court's determination that an insurer unreasonably refused to pay automobile no-fault insurance benefits such that

the insurer becomes liable for the insured's attorney fees is not clearly erroneous where the insurer denies the claim for benefits on the basis of nonliability because of the parked vehicle exception and fails to investigate the insured's claim that the injuries resulted from the operation of a vehicle other than the parked vehicle (MCL 500.3148[1]; MSA 24.13148[i]).

7. INSURANCE — NO-FAULT INSURANCE — OVERDUE BENEFITS — PRESUMPTIONS.

The no-fault insurance act provides that personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of the loss sustained; a rebuttable presumption of unreasonable refusal or delay arises where benefits are not paid within the statutory period.

8. ATTORNEY AND CLIENT — ATTORNEY FEES — REASONABLE FEES — CONTINGENT FEES — FINDINGS OF FACT.

Factors to be taken into consideration in determining the reasonableness of an attorney's fee include: (1) the professional standing and experience of the attorney, (2) the skill, time and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client; a contingent fee agreement may also be considered as a factor, but is not by itself determinative; while a trial court should consider each factor, the trial court need not detail its findings as to each specific factor.

9. APPEAL — ATTORNEY FEES — REASONABLE FEES — FINDINGS OF FACT.

An award of attorney fees will be upheld as reasonable unless it appears upon appellate review that the trial court's findings on the "reasonableness" issue were an abuse of discretion.

10. INSURANCE — NO-FAULT INSURANCE — PERSONAL PROTECTION BENEFITS — INTEREST.

The provision in the automobile no-fault insurance act providing that the insurer shall pay interest on any overdue payments of personal protection benefits for which the insurer is liable is applicable to claims which the insurer in good faith rejects; an insurer rejects a claim for benefits at its own risk (MCL 500.3142; MSA 24.13142).

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.,* (by *George T. Sinas),* for plaintiff.

*Gromek, Bendure & Thomas* (by *Nancy L. Bosh),*
for defendant.

Before: M. J. KELLY, P.J., and GRIBBS and R. L.
TAHVONEN,* JJ.

PER CURIAM. Charles L. Bradley brought this
suit against Detroit Automobile Inter-Insurance
Exchange (DAIIE) to recover personal injury pro-
tection benefits pursuant to MCL 500.3105(1); MSA
24.13105 under a policy of no-fault insurance on
his wife's vehicle. Bradley's injuries were sus-
tained in an accident involving his motorcycle,
which was not covered by no-fault insurance. Be-
fore trial, he moved for partial summary judgment
on the issue of liability. The trial court granted
the motion, and the defendant appeals of right.

On May 24, 1979, at approximately 3:00 a.m.
and shortly after plaintiff had finished work at the
Fisher Body Division of General Motors in Lans-
ing, the plaintiff mounted his 550 Honda motorcy-
cle to go home. After going through the open gates
of the plant, he drove through the green light at
Michigan Avenue and Hungerford Street just past
the gate, then on across Michigan Avenue, and
headed southbound on Hungerford. Hungerford is
a one-way street three lanes wide. The plaintiff
attested that he proceeded in the far left-hand
lane and that there was a vehicle in the center
lane to his immediate right as well as "a flow of
traffic" behind him. Bradley was traveling between
30 and 35 mph and had his headlight on, with the
beam shining approximately 30 feet in front of
him. He remained in the outer left-hand lane until
the accident.

As Bradley crossed Michigan Avenue, there was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a light-colored car driving next to him in the center lane. His motorcycle was even with the rear quarter panel of the car, the front of the car being about five feet in front of the motorcycle. The vehicle, it was later discovered, was a Subaru driven by Harold Tefft. As he headed southward on Hungerford between Washtenaw and Kalamazoo Avenues, the plaintiff noticed a "shadow" ahead in the left-hand lane. He did not recall how far from the "shadow" he was when he first noticed it. Upon seeing the shadow, he wanted to move into the center lane, but was prevented from doing so by the position of Tefft's vehicle. At this point, the plaintiff is not sure whether he sped up or slowed down, or in which order he did so. He did state after the accident that when he attempted to speed up the car next to him did likewise, whereupon the plaintiff slowed down to try and switch lanes behind Tefft. Bradley attested:

"I looked over my right shoulder, I believe, and I turned to check if I could get by him to get into the middle lane and I was turning the bike. I had enough room and I was turning the bike like that. I looked up and boom, just as quick as that."

Bradley ran into the back of a parked pickup truck which was in the left-hand lane on Hungerford. He fractured his left femur, requiring surgery and the use of two metal plates and pins. He also fractured and dislocated his left elbow and right wrist, broke his right thumb and left forearm, and cracked his left kneecap. His injuries have necessitated multiple surgery.

Bradley never applied his brakes nor used his horn. Theron Fraser stated upon deposition that the plaintiff told him the car on his right was a

Gremlin and that "some foreman down there ran him off the road and that he knew the foreman". The plaintiff denied that he ever stated the car was a Gremlin or that he knew who the other driver was. And while he believed Tefft sped up, the plaintiff did not feel this was intentional. There was also no contact made between the plaintiff's motorcycle and Tefft's automobile; the plaintiff was simply prevented from changing lanes.

Harold Tefft was also deposed and stated his recollection of the incident. He exited from the Fisher Body plant at Hungerford and Michigan and continued southbound in the center lane on Hungerford. Tefft recalled that the plaintiff's motorcycle was behind him in the center lane before they crossed Michigan Avenue. Bradley followed Tefft in the center lane until they reached the second block, when Bradley pulled out and proceeded in the left-hand lane. Bradley gradually caught up to Tefft and drove next to Tefft for approximately 200 feet until the middle of the block, where the accident occurred. The plaintiff never passed Tefft, so that Tefft's headlights shone on the plaintiff, but rather remained to his immediate left. At the time Tefft heard the crash, he was beyond the pickup, but he could see the impact of the vehicle "on the side of [his] vision". Tefft further stated that:

"[I]f [Bradley] had bounced out in the middle lane he would have been behind me. * * * He wasn't far enough in front of me to bounce out in the middle lane. Again he is here, and he is in the process of stopping, and I am continuing on my speed, and there is no way he can get in front of me. He can't even get on the side of me, you know, there is no way."

Tefft did not see the pickup truck before the accident.

A hearing on Bradley's motion for partial summary judgment was held on March 11, 1981, and summary judgment was granted on October 2, 1981. Attorney fees pursuant to MCL 500.3148; MSA 24.13148 and interest pursuant to MCL 500.3142; MSA 24.13142 and MCL 600.6013; MSA 27A.6013 were awarded the plaintiff. DAIIE appeals the grant of summary judgment and the award of attorney fees and interest.

## I. LIABILITY

MCL 500.3105(1); MSA 24.13105(1) provides in pertinent part:

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

In *Kangas v Aetna Casualty & Surety Ins,* 64 Mich App 1, 13; 235 NW2d 42 (1975), the Court cited with approval the following language:

"The words 'arising out of' have been viewed as words of much broader significance than 'caused by', and have been said to mean 'originating from', 'having its origin in', 'growing out of' or 'flowing from', or in short, 'incident to' or 'having connection with' the use of the car. *Schmidt v Utilities Ins Co,* 353 Mo 213; 182 SW2d 181 (1944), *National Indemnity Co v Corbo,* 248 So 2d 238 (Fla App, 1971)."

The *Kangas* Court thereafter held:

"In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury

sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." 64 Mich App 17.

In subsequent cases, it has been held that use of the vehicle need only be one of the causes of injury, even though there may be an independent cause, *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 313; 282 NW2d 301 (1979), and that actual contact with the motor vehicle is not required, *Bromley v Citizens Ins Co of America,* 113 Mich App 131, 135; 317 NW2d 318 (1982). Indeed, *Shinabarger* quoted language from other jurisdictions to the effect that "almost any causal connection or relationship will do". 90 Mich App 314.

In the instant case, it could be argued that Tefft's motor vehicle did not cause the plaintiff to take action that resulted in his injury. Rather, the motor vehicle prevented the plaintiff from avoiding the accident. In this sense, it could be arguably concluded that Bradley's injuries did not arise from the use of an automobile and that any object could have prevented him from switching lanes. Therefore, the fact that it was a motor vehicle was merely fortuitous. See *Peck v Auto-Owners Ins Co,* 112 Mich App 329; 315 NW2d 586 (1982).[1] We believe, however, that a causal connection between the use of a motor vehicle and the plaintiff's injuries was established.

In *Kangas, supra,* the Court used the phrases "incident to", "flowing from", and "having connection with" the use of a motor vehicle. Moreover, causation has been couched in terms of the injury

---

[1] In *Peck,* the plaintiff drove into a building while fleeing from police. Fleeing from police was not deemed "foreseeably identifiable" with the normal use of a motor vehicle.

being " 'foreseeably identifiable' with the normal use of a motor vehicle". *Peck, supra,* p 334. In fact, *Peck* seems to turn on the fact that flight from police was not intended to fall within "normal use". In the instant case, though, the plaintiff was in the left-hand lane to pass a motor vehicle. Moreover, the plaintiff was forced to temper his actions once he spotted the parked pickup truck in view of the fact that a car was in the lane to his immediate right. Tefft's vehicle was positioned next to the plaintiff because Tefft was proceeding in a manner foreseeably identifiable with the normal use of an automobile. This is not a case where injuries arose from a "non-normal" use of a motor vehicle. Indeed, Bradley's injuries arose from the normal perils of driving in traffic.

The plaintiff was uncertain whether he first sped up or slowed down in order to switch lanes. This is not material in our view. The normal use of a motor vehicle, *i.e.,* driving side by side with another vehicle, caused the plaintiff to react. Further, Bradley stated that he looked over his shoulder to see if he could switch lanes. It caused him to lose valuable time. Were Tefft's vehicle not in the position it was, the plaintiff would not have had to hesitate and look over his shoulder to see if he could switch lanes. And because Tefft's vehicle was proceeding normally through traffic, we do not feel it was fortuitous that the object which prevented the plaintiff from avoiding the accident was a motor vehicle.

## II. ATTORNEY FEES

At the hearing on the motion for attorney fees, attorney William N. Kritselis testified as to the reasonableness of the fee. Additionally, the deposition of Rick Kase, a claims adjuster for DAIIE,

was relied upon in substantial part in determining the propriety of awarding attorney fees.

The plaintiff was awarded $7,604 in attorney fees, with interest from December 11, 1981. It was determined that on December 11, 1981, the amount of benefits due, including interest, totaled $24,026. Between that time and the hearing, additional interest amounted to $1,440, bringing the plaintiff's total recovery to $25,466. The $24,026 figure included $1,211 in costs, which were deducted to reach $22,815.[2] The trial court then multiplied this amount by 33.33%[3] to arrive at an award of attorney fees in the amount of $7,604.

MCL 500.3148(1); MSA 24.13148(1) provides:

"An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

The Court in *Liddell v DAIIE,* 102 Mich App 636, 650; 302 NW2d 260 (1981), stated the relevant standards with respect to this provision:

"While the terms 'unreasonably refused' and 'unreasonably delayed' are not further defined, the case law indicates that a delay is not unreasonable where it is the product of a legitimate question of statutory construction, constitutional law, or even a bona fide factual

---

[2] While the trial court stated on the record that the difference between $24,026 and $1,211 is $22,715, it is clear that the calculation of the amount of attorney fees was based on the correct figure of $22,815.

[3] The trial court indicated on the record that he used 33% to calculate the amount of attorney fees; however, it is clear from other comments relative to the computation that the court used 33.33%.

uncertainty. See *Davidson v Johnson,* 76 Mich App 497, 504; 257 NW2d 139 (1977), *on reh* 79 Mich App 660, 666-667; 262 NW2d 887 (1977), *Richards v American Fellowship Mutual Ins Co,* 84 Mich App 629, 635; 270 NW2d 670 (1978), *Lewis v Detroit Automobile Inter-Ins Exchange,* 90 Mich App 251, 257; 282 NW2d 794 (1979).

"The trial court's finding of unreasonableness on the part of the insurance company will be disturbed on appeal only if that finding is clearly erroneous. GCR 1963, 517.1; *Motorists Mutual Ins Co v Howard,* 21 Mich App 146, 149; 175 NW2d 351 (1970)."

The stages of investigation of the plaintiff's claim were described in the Kase deposition and the exhibits introduced at the taking of that deposition further outlined the defendant's actions. The deposition testimony and exhibits clearly demonstrate that the defendant insisted that the plaintiff was not entitled to personal injury protection benefits under MCL 500.3106; MSA 24.13106, because the pickup truck was not unreasonably parked. Section 3106(1)(a) addresses the situation where an accident and resultant injury involve a parked vehicle. The plaintiff, however, clearly apprised DAIIE that his claim was based on § 3105(1), dealing with injuries arising out of the use of a motor vehicle, and not § 3106. DAIIE unreasonably concluded that this was unimportant and did not attempt to investigate the claim that the Tefft vehicle (not the pickup truck) was the basis for the demand for personal injury protection benefits. While it is true that the defendant was never informed of the name of the car driver (Tefft), the crucial fact is that, in seeking information from the investigating police officer, DAIIE never requested any information pertaining to a claim under § 3105(1) or the plaintiff's allegations that another moving vehicle caused his injury.

Thus, although the factual situation here could

provide the basis for a "bona fide factual uncertainty" had DAIIE proceeded reasonably with respect to the claim, the defendant's refusal to take proper action in determining whether such uncertainty existed was unreasonable. Moreover, the assistant manager of DAIIE's Lansing claims office, T. J. Dumala, recommended on December 3, 1979, that the defendant pay the claim. These factors support the trial court's finding of unreasonableness. It, therefore, cannot be said that the finding was clearly erroneous. GCR 1963, 517.1; *Liddell, supra.* In any event, plaintiff correctly argues that this Court in *Combs v Commercial Carriers, Inc,* 117 Mich App 67, 73; 323 NW2d 596 (1982), held that a rebuttable presumption of unreasonableness should be employed when benefits are not paid within the statutorily prescribed limit of 30 days after an insurer receives reasonable proof of the fact and amount of loss sustained. In the instant case, the defendant's failure to investigate entitlements under § 3105(1) leaves the plaintiff's claim "reasonably proven", and nothing was introduced at the hearing to rebut this presumption. The defendant's assertion that it was unaware of the identity of Tefft is without merit where, as here, no reasonable effort was made to ascertain the identity from the investigating police officer. The finding that attorney fees should be awarded was not clearly erroneous.

The next inquiry is whether the amount awarded was unreasonable, as the defendant asserts. In *Liddell, supra,* pp 651-652, the Court was confronted with the propriety of awarding attorney fees on a contingency basis and held:

"The plaintiff argues that the contingent fee arrangement is per se reasonable under GCR 1963, 928. However, this court rule is srictly limited to cases involving

personal injury and wrongful death, and is therefore not applicable to the instant case, which is essentially a contract action.

"Absent a legislative pronouncement on determination of reasonableness, we would adhere to the guideline enumerated in *Crawley v Schick,* 48 Mich App 728, 737; 211 NW2d 217 (1973), as follows:

" 'There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. See generally 3 Michigan Law & Practice, Attorneys and Counselors, § 44, p 275 and Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics.'

See, also, *Nelson v City of Dearborn,* 340 Mich 544; 66 NW2d 78 (1954). While a contingent fee agreement may be considered as one factor in determining the reasonableness of a fee, it is not by itself determinative."

The Supreme Court in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982), endorsed the *Crawley/Liddell* factors and further stated:

"While a trial court should consider the guidelines of *Crawley,* it is not limited to those factors in making its determination. Further, the trial court need not detail its findings as to each specific factor considered. The award will be upheld unless it appears upon appellate review that the trial court's finding on the 'reasonableness' issue was an abuse of discretion."

Testimony was taken from William Kritselis as to the competence, reputation and experience of the plaintiff's attorney, George T. Sinas. Kritselis also studied the file in the case and opined that

the skill of the attorneys reduced substantially the amount of time which could have been spent on the case, and that the amount of time actually spent therefore was reasonable. There was also testimony that $80 per hour (with 132.6 hours billed) would be the "going rate" for a case such as this with an attorney whose competence equalled that of George T. Sinas. Under these circumstances, an application of an hourly rate would yield a total of $10,608. Finally, Kritselis stated that contingency fee arrangements were customary for no-fault litigation.

Thus, there was testimony as to the *Crawley* factors; the court did not simply take at face value the one-third contingency fee agreement between the plaintiff and his attorney. While the court did eventually use the contingent-fee calculation, this does not mean the court took such factor as determinative. The court need not detail its findings or base its finding exclusively on the *Crawley* factors. *Wood, supra.* Furthermore, the defendant contests certain items on the billing by arguing that some work was performed by law clerks and may have involved a greater amount of time than was necessary. It is not the function of an appellate court to review every item submitted. Rather, the award will be upheld absent an abuse of discretion as to the reasonableness of the award (not each individual item). Under these circumstances, it cannot be said that the award was an abuse of discretion.

### III. Interest

MCL 500.3142; MSA 24.13142 provides:

"(1) Personal protection insurance benefits are payable as loss accrues.

"(2) Personal protection insurance benefits are over-

due if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

"(3) An overdue payment bears simple interest at the rate of 12% per annum."

In considering whether an award under this section depends on the reasonableness of the denial of payment, this Court held in *Cook v DAIIE,* 114 Mich App 53, 54-55; 318 NW2d 476 (1982):

"Our further review convinces us that the standards for determining the interest awards under the two statutes are in fact dissimilar.

\* \* \*

"Thus, on remand the trial court need only determine whether personal protection insurance benefits were paid within 30 days after reasonable proof of the loss and its amount were conveyed to the insurer to award 12% simple interest on an overdue payment."

Hence, the reasonableness of the refusal is of no consequence. It need only be determined whether there was reasonable proof of loss. Moreover, as the plaintiff points out, this Court has recently addressed this issue in detail in *Nash v DAIIE,* 120 Mich App 568; 327 NW2d 521 (1982). The Court was confronted there with whether or not interest should be awarded when a carrier denies pay-

ments based on an erroneous, but good faith, interpretation of a statute. The Court held:

"Section 3142(2) provides that personal protection insurance benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the *fact* of injury and of the amount of loss sustained. Payments are not overdue if they are not supported by reasonable proof.* * *

"The defendant did not challenge the reasonableness of the plaintiff's claim or the accuracy of the proof. Instead, the defendant asserted that it was *legally* entitled to subtract Medicare benefits from its coverage. Since this position proved to be unjustified, the benefits were overdue. Interest is owing because the defendant's defense is not recognized by § 3142(2). The plaintiff's right to interest is not dependent upon the presence or absence of the insurer's good faith in rejecting a claim. A carrier rejects a claim at its own risk. It will owe interest if its interpretation of the statute proves to be erroneous. *Carrillo v State Farm Mutual Automobile Ins Co,* 96 Nev 793; 618 P2d 351, (1980); *Ortiz v Safeco Ins Co,* 144 NJ Super 506; 366 A2d 695 (1976); *Hayes v Erie Ins Exchange,* 493 Pa 150; 425 A2d 419 (1981). If this result seems harsh, it must be remembered that the defendant had full and unimpeded use of the sum involved during this dispute." *Nash, supra,* pp 572-573. (Emphasis in original.)

Accordingly, these two decisions indicate that the only basis for denying interest is where the claimant did not submit reasonable proof of the fact of injury and the amount of loss sustained. In the instant case, the discussion in Issue II has already brought to light the defendant's inaction in this matter. The defendant did not dispute the plaintiff's claim of proof but instead ignored it. The plaintiff presented reasonable proof of the fact of injury and the loss sustained. DAIIE's failure to properly investigate and honor the claim was at its own risk. The trial court properly awarded interest.

The judgment of the trial court is affirmed.