DEPARTMENT OF SOCIAL SERVICES v AUTO CLUB
INSURANCE ASSOCIATION

Docket No. 93421. Submitted January 6, 1988, at Lansing. Decided
October 17, 1988.

Jackie Smith was injured when, as he moved forward after
stopping for a stoplight, the throttle of the motorcycle on which
he was riding stuck, causing it to go out of control. Smith
swerved toward the automobile which had just started moving
in the same direction as he was going in the lane to Smith's
right. Smith extended his leg and pushed off the left rear tire of
the automobile, causing him to swerve in the opposite direction
and hit a brick wall. The Michigan Department of Social
Services paid Smith's medical bills and then, as Smith's subro-
gee, brought an action in Genesee Circuit Court to recover
personal protection benefits from Auto Club Insurance Com-
pany, no-fault insurer of the automobile which had been in the
adjacent lane when the accident occurred. Both plaintiff and
defendant moved for summary disposition. The trial court,
Valdemar L. Washington, J., granted plaintiff's motion, holding
that there was a sufficient causal relationship between the
operation of the automobile as a motor vehicle and the injuries
to satisfy the statutory requirement that the automobile be
involved in the accident. Defendant appealed.

The Court of Appeals held:

Affirmed.

K. B. Glaser, Jr., would affirm because, given the fact that
the automobile was moving when Smith contacted the tire of
that vehicle with his foot and set himself off on his course to
the wall, there was a sufficient showing of a causal relationship
between the operation of the automobile as a motor vehicle and
Smith's injuries to bring the claim within the scope of the
personal protection benefits provision of the no-fault act.

Beasley, J., concurred in the result only.

Cynar, P.J., dissented. He would hold that there was only an
incidental or fortuitous connection between the injuries sus-
tained and the use of the automobile as a motor vehicle. He
would reverse.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Bernard Rosner,* Assistant Attorney General, for plaintiff.

*Gromek, Bendure & Thomas* (by *John A. Lydick*), for defendant.

Before: CYNAR, P.J., and BEASLEY and K. B. GLASER, JR.,* JJ.

K. B. GLASER, JR., J. The Department of Social Services, as subrogee of Jackie Smith, seeks to recover first party no-fault personal injury protection benefits arising out of an injury to Jackie Smith while he was operating a motorcycle. The stipulated facts submitted to the trial court are as follows:

On April 16, 1984, at approximately 12:40 P.M., Jackie Smith was operating his motorcycle, and Rosemarie Besant was operating an automobile insured by [Auto Club Insurance Association]. The Smith motorcycle and the Besant automobile were stopped, side by side in adjacent lanes, for a traffic light at an intersection. As the traffic light changed, the Besant auto began to move forward slightly, but the Smith motorcycle stalled. Mr. Smith immediately restarted his cycle, but the throttle stuck and the cycle took off out of control. As the motorcycle proceeded into the intersection, it swerved toward the Besant vehicle in the adjacent lane, whereupon Mr. Smith, the cyclist, extended his leg and pushed off the left rear tire of the Besant vehicle. At that point, the motorcycle swerved into the opposite direction, went up over the curve, and hit a brick wall. As the motorcycle had swerved away from the Besant auto and had travelled across the road at full throttle, Mr. Smith's feet were off the foot pegs of the motorcycle, and he was hanging onto the handlebars. As a

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

result of crashing into the brick wall, cyclist Smith
sustained multiple severe injuries.

Plaintiff paid Jackie Smith's medical bills and
seeks to recover them from defendant. Both par-
ties moved for summary disposition pursuant to
MCR 2.116(C)(10), alleging no genuine issue as to
any material fact. The sole issue before the trial
court was whether the Besant vehicle, insured by
defendant, was "involved in the accident" such
that Mr. Smith's injuries could be deemed to have
"arisen out of" the operation of a motor vehicle
pursuant to MCL 500.3105; MSA 24.13105. The
trial court ruled there was a sufficient causal
relationship and granted summary disposition to
plaintiff. We affirm.

MCL 500.3105(1); MSA 24.13105(1) provides:

> Under personal protection insurance an insurer
> is liable to pay benefits for accidental bodily injury
> arising out of the ownership, operation, mainte-
> nance or use of a motor vehicle as a motor vehicle,
> subject to the provisions of this chapter.

The Michigan Supreme Court in a case involving
an assault in a taxicab construed the above statute
as follows:

> In drafting MCL 500.3105(1); MSA 24.13105(1),
> the Legislature limited no-fault PIP benefits to
> injuries arising out of the "use of a motor vehicle
> *as a motor vehicle.*" In our view, this language
> shows that the Legislature was aware of the causa-
> tion dispute and chose to provide coverage only
> where the causal connection between the injury
> and the use of a motor vehicle as a motor vehicle
> is more than incidental, fortuitous, or "but for."
> The involvement of the car in the injury should be
> "directly related to its character as a motor vehi-
> cle." *Miller v Auto-Owners* [*Ins Co,* 411 Mich 633;

309 NW2d 544 (1981)]. Therefore, the first consid-
eration under MCL 500.3105(1); MSA 24.13105(1),
must be the relationship between the injury and
the vehicular use of a motor vehicle. Without a
relation that is more than "but for," incidental, or
fortuitous, there can be no recovery of PIP benefits.
   The connection in this case between the debili-
tating injuries suffered by Mr. Thornton and the
use of the taxicab as a motor vehicle is no more
than incidental, fortuitous, or "but for." The motor
vehicle was not the instrumentality of the injuries.
Cf. *Gajewski v Auto-Owners Ins Co,* 414 Mich 968;
326 NW2d 825 (1982). The motor vehicle here was
merely the situs of the armed robbery—the injury
could have occurred whether or not Mr. Thornton
used a motor vehicle as a motor vehicle. Cf. *Saun-
ders v DAIIE,* 123 Mich App 570; 332 NW2d 613
(1983), and *Mann v DAIIE,* 111 Mich App 637; 314
NW2d 719 (1981). The relation between the func-
tional character of the motor vehicle and Mr.
Thornton's injuries was not direct—indeed, the
relation is at most incidental. [*Thornton v Allstate
Ins Co,* 425 Mich 643, 659-660; 391 NW2d 320
(1986). Emphasis in original.]

Defendant argues that the trial court in the
instant case applied the wrong legal standard or
test for determining motor vehicle "involvement."
However, defendant also argues that, if the correct
standard had been applied, the stipulated facts of
the instant case simply do not demonstrate a
sufficient causal nexus between motorcyclist
Smith's injuries and the Besant auto to qualify
Mr. Smith for PIP coverage under the Besant vehi-
cle's policy. We disagree.
   Defendant bases the latter claim on an assertion
that the motor vehicle must play an active (but
not necessarily negligent), rather than merely pas-
sive, role in the accident in order to be deemed
"involved." Defendant relies on *Brasher v Auto
Club Ins Ass'n,* 152 Mich App 544; 393 NW2d 881

(1986), *Bachman v Progressive Casualty Ins Co,*
135 Mich App 641; 354 NW2d 292 (1984), *Bradley
v DAIIE,* 130 Mich App 34; 343 NW2d 506 (1983),
and *Stonewall Ins Group v Farmers Ins Group,*
128 Mich App 307; 340 NW2d 71 (1983). We,
however, find *Stonewall, Bachman,* and *Brasher*
distinguishable as cases in which the vehicle in
question was stopped and did not play an "active"
role as claimed by defendant.

In *Stonewall,* the vehicle in question was
stopped waiting in a lawful position to turn. To
avoid colliding with that vehicle, another car
swerved sharply and hit a bicyclist. The panel in
*Stonewall* held that the first vehicle was not in-
volved in the accident between the second vehicle
and the bicyclist within the meaning of the stat-
ute. In *Bachman,* the vehicle in question was also
lawfully in position to turn when a motorcyclist
collided with another vehicle, throwing the passen-
ger from the motorcycle onto the subject auto. The
*Bachman* Court held the subject auto to be only
the situs of the injury and not "involved in the
accident." In *Brasher,* a vehicle owned by Ellis was
lawfully stopped waiting for a turn. Two other
autos collided. One of them struck a pedestrian
and the other vehicle hit the Ellis vehicle. This
Court held that the Ellis vehicle was not "involved
in the accident." The *Brasher* Court summarized
these three cases as holding "there must be some
*activity,* with respect to the vehicle, which some-
how contributes to the happening of the accident."
(Emphasis added.) *Brasher, supra,* p 546.

*Bradley,* on the other hand, supports plaintiff's
position. *Bradley* was a case in which the plaintiff
ran into a parked pickup truck. He was unable to
avoid the truck because of a vehicle which was
moving in the lane beside him. (The pickup truck
was not alleged by either party to trigger the no-

fault statute.) In finding a causal connection be-
tween the use of a motor vehicle and the plaintiff's
injuries, the *Bradley* Court reasoned:

> The plaintiff was uncertain whether he first sped
> up or slowed down in order to switch lanes. This is
> not material in our view. The normal use of a
> motor vehicle, *i.e.,* driving side by side with an-
> other vehicle, caused the plaintiff to react. Fur-
> ther, Bradley stated that he looked over his shoul-
> der to see if he could switch lanes. It caused him
> to lose valuable time. Were Tefft's vehicle not in
> the position it was, the plaintiff would not have
> had to hesitate and look over his shoulder to see if
> he could switch lanes. *And because Tefft's vehicle
> was proceeding normally through traffic, we do not
> feel it was fortuitous that the object which pre-
> vented the plaintiff from avoiding the accident was
> a motor vehicle.* [130 Mich App 43. Emphasis in
> original.]

While no iron-clad rule can be discerned as to
what involvement is sufficient under MCL
500.3105; MSA 24.13105, some guidelines emerge
from a reading of the cases.

First, it appears that a vehicle which is motion-
less in a lawful position is less likely to be consid-
ered involved.[1] Conversely, in view of the *Thornton*
emphasis on the relation between the injury and
the functional character of a motor vehicle, a
*moving* vehicle is much more likely to be held to
be involved in such injuries for purposes of the
statute. *Thornton, supra,* pp 659-660. See also,
*Bramley v Citizens Ins Co of America,* 113 Mich
App 131; 317 NW2d 318 (1982).

In addition, in spite of the fact that no contact is
necessary for such involvement in the accident
(*Bradley, supra*), since *Thornton* emphasized that

[1] But see *Jones v Allstate Ins Co,* 161 Mich App 450, 455-460; 411
NW2d 457 (1987).

there was no *direct* relation between Thornton's injuries and the functional character of the motor vehicle in question, the existence of *contact* with the motor vehicle is much more likely to be held to result in involvement sufficient to trigger this statute. Indeed, it is difficult to conceive of a situation in which injury results where there is actual contact on a public highway between the injured party or his vehicle and a moving motor vehicle that would not be sufficient for a "direct relation" between the injury and the functional character of the motor vehicle in view of present case law.[2]

Finally, it is clear that the injury must be foreseeably identified with the normal use, maintenance and ownership of the motor vehicle. *Ricciuti v DAIIE,* 101 Mich App 683; 300 NW2d 681 (1980); *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975).

In this case, the Besant vehicle was being operated as a motor vehicle on the public highway. The movement of the automobile was one of the factors, along with the movement of the motorcycle, which resulted in the injuries to Smith. Factors in the dynamics of the accident included the forces exerted by *both* vehicles, the *fact* that the vehicles struck,[3] the *angle* and *location* at which they struck, and the course of the subsequent deflection which resulted in the injury. The relation between the functional character of the motor

---

[2] One possibility might be where the injured party is fleeing on a motorcycle from a police cruiser *if* there is contact with the police cruiser. See *Sanford v Ins Co of North America,* 151 Mich App 747; 391 NW2d 473 (1986); *Peck v Auto-Owners Ins Co,* 112 Mich App 329, 334; 315 NW2d 586 (1982).

[3] As the dissent correctly notes, the vehicles themselves did not come in contact. However, the motorcycle rider was clearly on the moving motorcycle when he "pushed off."

vehicle and Smith's injuries was direct. The relationship between the motor vehicle and the injuries was therefore more than incidental, fortuitous, or "but for." A collision between a motorcycle and an automobile while operating on a highway is clearly foreseeably identifiable with the normal use of a motor vehicle.

The trial judge correctly granted summary disposition to plaintiff.

Affirmed.

BEASLEY, J., concurred in result only.

CYNAR, P.J. *(dissenting).* I most respectfully dissent from the result reached in the majority opinion. There was no contact between the motorcycle and the Besant vehicle. Nor was there any indication that it would make any difference whether the Besant vehicle was stopped or moving in its own direction when the motorcyclist extended his leg and pushed off from the left rear tire of the Besant vehicle.

There was no more than "but for," incidental, or fortuitous connection between the injuries sustained by the motorcyclist and the "use of a motor vehicle as a motor vehicle." *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975). In my opinion, reversal is appropriate.