# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 5, 2009

136502(48)

PHYLLIS SCOTT, as Co-Guardian and
Co-Conservator, DONALD SCOTT as
Co-Guardian, and JOHN PFEFFER as
Co-Conservator of the Estate of Kristen
Krohn, an incapacitated individual,
           Plaintiffs-Appellees,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
           Defendant-Appellant.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 136502
COA: 276544
Ingham CC: 06-001595-AV
Ingham PC: 05-001295-CZ

On order of the Court, the motion for reconsideration of this Court's December 3, 2008 order is considered, and it is GRANTED. We VACATE our order dated December 3, 2008. On reconsideration, the application for leave to appeal the April 15, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

KELLY, C.J. (*concurring*).

I concur in this Court's order granting reconsideration and vacating our December 3, 2008 order.[1] Our prior order improperly vacated the portion of the Court of Appeals opinion stating that "[a]lmost any causal connection or relationship will do."[2]

This case involves an interlocutory appeal by defendant, State Farm Mutual Automobile Insurance Company, from the probate court's denial of summary disposition.

---

[1] 482 Mich 1074 (2008).

[2] *Scott v State Farm Mut Automobile Ins Co,* 278 Mich App 578, 586 (2008) (citations and quotation marks deleted).

Plaintiff's claim was made under the no-fault insurance act,[3] and the issue on appeal is the level of causation required to support a claim under the act.

Plaintiff was injured in an automobile accident in 1981 that left her impaired and legally incapacitated. Because of skeletal and brain trauma from the accident, she has been unable to lead a normal active life and, as a result, has gained some 80 pounds.[4] This, in turn, has caused her cholesterol to skyrocket, causing hyperlipidemia. She now requires medication to control it. Defendant State Farm originally paid for plaintiff's medication, but has since terminated her benefits.[5] Plaintiff sued to reinstate the benefits, and when State Farm moved to dismiss her claim, the probate court denied the motion. The circuit court denied leave to appeal, and the Court of Appeals affirmed the probate court's decision in a published opinion per curiam.[6]

Previously, this Court partially vacated the Court of Appeals judgment. In so doing, the Court ignored a line of Michigan caselaw that has existed and been followed since 1979. It concerns the threshold level of causation a plaintiff must establish to proceed in no-fault cases. Current law holds that evidence establishing "almost any causal connection or relationship will do,"[7] as the Court of Appeals indicated. The causal connection must also be "more than incidental, fortuitous or 'but for.'"[8]

Contrary to the dissent's conclusion, the Court of Appeals correctly followed and applied the law. As the Court of Appeals held in *Kangas v Aetna Casualty & Surety Co,* "while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which *causal connection is more than incidental, fortuitous or but for.*"[9]

Four years later, the Court of Appeals, in *Shinabarger v Citizens Mut Ins Co,* again examined the causation element of no-fault insurance claims:

---

[3] MCL 500.3101 *et seq.*

[4] She weighed 120 pounds before the accident.

[5] State Farm's own independent medical examiner acknowledged a causal link between plaintiff's hyperlipidemia and the automobile accident.

[6] *Scott, supra.*

[7] *Bradley v Detroit Automobile Inter-Ins Exch,* 130 Mich App 34, 42 (1983) (citation and quotation marks deleted).

[8] *Thorton v Allstate Ins Co,* 425 Mich 643, 659 (1986).

[9] *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17 (1975) (emphasis added).

The term "arising out of" does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle . . . . [A]*lmost any causal connection or relationship will do* . . . . [T]he injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something distinctly remote. Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from", "had its origin in", "grew out of", or "flowed from" the use of the vehicle. [Citations and quotation marks deleted; emphasis added.][10]

In 1983, in *Bradley,* the Court of Appeals repeated the language from *Shinabarger*, stating that "almost any causal relationship or connection will do."[11] However, *Bradley* also quoted the *Kangas* holding that "'there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for.'"[12] It is noteworthy that *Bradley* used both the *Kangas* and *Shinabarger* standards, indicating that they are compatible.

In *Thornton,* this Court repeated the "incidental, fortuitous, or 'but for'" language of *Kangas*.[13] *Thornton* did not discuss the "almost any causal connection will do" language. Recently, in *Putkamer v Transamerica Ins Corp of America*, this Court affirmed that the casual connection between an injury and the use of the motor vehicle must be more than incidental, fortuitous, or "but for." [14]

The Court of Appeals did not err in relying on these cases to interpret the causal nexus required in a no-fault case involving injury. Precedent makes clear that an injury requires more than a fortuitous, incidental, or "but for" causal connection, but does not require proximate causation. As *Bradley* states, "almost any causal connection will do." Nothing suggests that these two standards are in opposition or cannot be applied together. They logically build on one another and stand for the same basic proposition. Taken together, they mean that evidence establishing almost any causal connection will suffice when it is more than merely fortuitous, incidental, or but for. But it need not be much more; almost any causal connection or relationship will do. The Court in *Bradley* recognized this when it cited both standards to render its decision, just as the Court of Appeals did in this case.

---

[10] *Shinabarger v Citizens Mut Ins Co*, 90 Mich App 307, 313-314 (1979).

[11] *Bradley, supra* at 42 (citation and quotation marks deleted).

[12] *Id.* at 41-42.

[13] *Thornton, supra* at 659.

[14] *Putkamer v Transamerica Ins Corp of America,* 454 Mich 626, 634 (1997).

The Court of Appeals undertook a thorough analysis of no-fault law and applied it correctly. Rather than apply no-fault law as it has been understood for nearly 30 years, the dissent appears to want to extend the scope of *Putkamer.* It appears intent on silencing the valid and applicable law of *Bradley* and *Shinabarger,* law that forms the contours of the *Putkamer* rule and aids in its application. I am unwilling to push *Putkamer* down a road it was never intended to travel by brushing *Bradley* and *Shinabarger* aside to become debris on the legal landscape.

In addition, the dissent asserts that this Court has been ignoring precedents. It is mistaken. For example, the dissent claims that in *Vanslembrouck v Halperin*,[15] the Court ignored *Vega v Lakeland Hosps*.[16] However, *Vanslembrouck* is distinguishable from *Vega* because *Vega* determined that MCL 600.5851(1) is a saving provision, whereas *Vanslembrouck* held that MCL 600.5851(7) is a statute of limitations. Thus, these cases examined the effects of altogether different statutory provisions.

The dissent also claims that in *Hardacre v Saginaw Vascular Services*,[17] the Court failed to follow *Boodt v Borgess Med Ctr*.[18] However, in *Hardacre*, the Court denied leave to appeal because the allegations in the plaintiff's notice of intent did not need to comply with *Boodt.* In *Hardacre,* the burden of explication of the standard of care was minimal.[19]

Nor did the Court ignore precedent in *Sazima v Shepherd Bar & Restaurant*.[20] The dissent claims that the Court failed to follow *Chrysler v Blue Arrow Transport Lines*.[21] However, *Sazima* involved exceptions to the "going and coming" rule as set forth in *Camburn v Northwest School Dist*.[22] Thus the Court was not bound by *Chrysler.*

---

[15] *Vanslembrouck v Halperin*, 483 Mich ___ (Docket No. 135893, order entered April 24, 2009).

[16] *Vega v Lakeland Hosps*, 479 Mich 243 (2007).

[17] *Hardacre v Saginaw Vascular Services*, 483 Mich ___ (Docket No. 135706, order entered March 27, 2009).

[18] *Boodt v Borgess Med Ctr*, 481 Mich 558 (2008).

[19] See *Roberts v Mecosta Co Gen Hosp* (*After Remand*), 470 Mich 679, 694 n 12 (2004).

[20] *Sazima v Shepherd Bar & Restaurant*, 483 Mich ___ (Docket No. 136940, order entered April 3, 2009).

[21] *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606 (1940).

[22] *Camburn v Northwest School Dist*, 459 Mich 471, 478 (1999).

Finally, the dissent claims that the Court ignored *Smith v Khouri*[23] when it decided *Juarez v Holbrook*.[24]   However, in *Juarez*, it was undisputed that the trial court performed a reasonableness analysis in calculating the proper attorney fee award. Therefore, a remand in light of *Smith* was unnecessary.

Justice Corrigan would have the Court ignore three decades of no-fault jurisprudence in an effort to select and silence what she finds to be disagreeable portions of precedent in the Court of Appeals opinion.  In addition, she reproaches the Court for refusing to extend precedent to new areas, claiming that refusing to extend precedent confuses the law and injects whimsy into it.  I reject these claims as unpersuasive when weighed objectively.   Accordingly, I respectfully concur in the order granting reconsideration and vacating this Court's prior order in this case.

CORRIGAN, J.  (*dissenting*).

I dissent from this Court's order granting reconsideration and vacating our December 3, 2008, order.  482 Mich 1074 (2008).  The Court of Appeals judgment in this case stated, with respect to the causal connection required under MCL 500.3105(1), that "almost any causal connection or relationship will do."  *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578, 586 (2008).  Our prior order properly vacated that portion of the Court of Appeals judgment as inconsistent with *Thornton v Allstate Ins Co*, 425 Mich 643 (1986), and *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626 (1997).

Plaintiff was severely injured in an automobile accident in 1981.  She suffered a traumatic brain injury, as well as injuries to her legs.  Within seven years of the accident, plaintiff gained a significant amount of weight.  She was diagnosed with high cholesterol in 1991.  She controlled her cholesterol level with a diet and exercise program until 1997, when her physician prescribed Zocor for high cholesterol.  Defendant paid for the medication for approximately seven years, but then terminated payment following an independent medical evaluation.  Defendant concluded, on the basis of the independent expert's report, that plaintiff's high cholesterol (hyperlipidemia) did not arise from the 1981 motor vehicle accident.

Plaintiff's representatives filed suit in probate court, seeking to compel defendant to pay for the medication.  The probate court denied defendant's motion for summary disposition, finding a question of fact concerning whether the necessary causal connection existed between plaintiff's high cholesterol and the accident.  The circuit court denied defendant's application for leave to file an interlocutory appeal.  The Court

---

[23] *Smith v Khouri*, 481 Mich 519 (2008).

[24] *Juarez v Holbrook*, 483 Mich ___ (Docket No. 137358, order entered April 24, 2009).

of Appeals affirmed the decision of the probate court. *Scott*, *supra*. After discussing the caselaw construing MCL 500.3105(1), the Court of Appeals concluded:

> Plaintiffs presented testimony indicating that the accident caused brain and skeletal injuries, which make it difficult for plaintiff to exercise, and which contribute to poor judgment regarding diet. Plaintiffs also presented evidence that this difficultly in exercising, and poor diet, contribute to hyperlipidemia. Plaintiffs are not required to establish direct or proximate causation. *Almost any causal connection will do*. Although a genetic predisposition to hyperlipidemia is apparently present, there is no authority that, for purposes of personal protection insurance, a plaintiff must exclude other possible causes (as there is, for instance, when proximate causation is at issue, in a traditional tort context). Plaintiffs have presented evidence to raise a genuine issue of material fact. [*Scott*, *supra* at 586 (citations omitted; emphasis added).]

Under MCL 500.3105(1), "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." In concluding that "almost any causal connection or relationship will do" for purposes of establishing causation under MCL 500.3105(1), the Court of Appeals in this case relied on *Shinabarger v Citizens Mut Ins Co*, 90 Mich App 307, 313-314 (1979), and *Bradley v Detroit Automobile Inter-Ins Exch*, 130 Mich App 34, 42 (1983), which used that language to describe the required causal connection. *Scott*, *supra* at 585-586. This Court has subsequently considered the required showing under MCL 500.3105(1). We have never adopted so expansive a test. Instead, in *Thornton*, *supra* at 659-660, we concluded:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault [personal protection insurance] benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle*." In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1)[] must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of [personal protection insurance] benefits. [Emphasis in original; citation omitted.]

In reaching this conclusion, we discussed *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1, 17 (1975), which adopted the "more than incidental, fortuitous or but for"

causation test. *Thornton*, *supra* at 650-651. We noted that "[w]hile the *Kangas* opinion was not available at the time the Michigan no-fault program was enacted, the bulk of the case law upon which *Kangas* relied was extant. This case law generally required more than 'but for,' incidental or attenuated causation." *Id*. at 651.

In *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 634 (1997), we reiterated the test adopted in *Thornton*:

> In reviewing the requirement of subsection 3105(1) that the injury arise out of the "use of a motor vehicle as a motor vehicle," this Court concluded that the Legislature has provided that there should only be coverage where the causal connection between the injury and the use of the motor vehicle was more than incidental, fortuitous, or "but for." [Citations omitted.]

The Court of Appeals was compelled to follow *Thornton* and *Putkamer*, which provide the controlling statement of the causal connection required under MCL 500.3105(1). In resorting to the "almost any causal connection or relationship will do" language of *Shinabarger* and *Bradley*, which this Court has never adopted, the Court of Appeals failed to do so.[25] Our prior order properly corrected the Court of Appeals' misstatement of the law. Accordingly, I respectfully dissent from the order vacating our prior order in this case.

The new majority's failure to enforce *Thornton* and *Putkamer* continues a growing and troubling trend. Rather than forthrightly overruling decisions with which it disagrees, it is increasingly becoming the practice of this Court to simply ignore these precedents. See, e.g., *VanSlembrouck v Halperin*, 483 Mich ___ (Docket No. 135893, order entered April 24, 2009), where the new majority ignored *Vega v Lakeland Hosps*, 479 Mich 243, 244 (2007); *Hardacre v Saginaw Vascular Services*, 483 Mich ___ (Docket No. 135706, order entered March 27, 2009), where it failed to follow *Boodt v Borgess Med Ctr*, 481 Mich 558 (2008); *Sazima v Shepherd Bar & Restaurant*, 483 Mich

---

[25] Chief Justice Kelly characterizes the "almost any causal connection" language of *Bradley* and *Shinabarger* as "no-fault law as it has been understood for nearly 30 years." No decision of this Court bears out such an understanding of no-fault law. In addition, Chief Justice Kelly's suggestion that the "almost any causal connection" standard could be applied with the "more than incidental, fortuitous, or but for" standard is irrelevant and inaccurate. We implicitly rejected that idea by not adopting the "almost any causal connection" language when we considered the extent of the causal connection required under MCL 500.3105(1) in *Thornton* and *Putkamer*. Moreover, the "almost any causal connection" language naturally suggests that the requisite causal connection may be established on weaker evidence than the more specific and narrowly drawn "more than incidental, fortuitous, or but for" standard.

___ (Docket No. 136940, order entered April 3, 2009), where it failed to follow *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606 (1940), and *Camburn v Northwest School Dist (After Remand)*, 459 Mich 471 (1999); and *Juarez v Holbrook*, 483 Mich ___ (Docket No. 137358, order entered April 24, 2009), where it failed to follow *Smith v Khouri*, 481 Mich 519 (2008).

In her concurrence, Chief Justice Kelly attempts to explain away the new majority's actions by sharing her views regarding the prior caselaw that the new majority has otherwise chosen to ignore. But Chief Justice Kelly's interpretation of a prior case in a concurring statement is not a decision of the Court. More importantly, her argument overlooks the fundamental problem: the new majority's continuing failure to explain its apparent disregard of this Court's precedent undermines the predictability and stability of the rule of law. What distinguishes governance by the rule of law from governance by whim is the application across all cases of a body of clear and intelligible principles. Inconsistent application converts the rule of law into rule by whim.

In *Van Orden v Perry*, 545 US 677, 697 (2005), a concurring justice similarly criticized the United States Supreme Court's Establishment Clause precedents as being so flexible that they were "incapable of consistent application." The concurring justice explained that "[t]he unintelligibility of this Court's precedent raises the further concern that, either in appearance or in fact, adjudication of Establishment Clause challenges turns on judicial predilections. . . . The outcome of constitutional cases ought to rest on firmer grounds than the personal preferences of judges." *Id*. (Thomas, J., concurring).

The concerns expressed in *Van Orden* find ample support in United States Supreme Court caselaw, which has long recognized the importance of a coherent body of law. See, e.g., *Hilton v South Carolina Pub Railways Comm*, 502 US 197, 202 (1991) (stating that adherence to precedent promotes stability and predictability). Legal principles should not change erratically; rather, the law should "develop in a *principled and intelligible* fashion." *Vasquez v Hillery*, 474 US 254, 265 (1986) (emphasis added). "While *stare decisis* is not an inexorable command, the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for *articulable* reasons . . . ." *Id*. at 266 (emphasis added).

On this Court, the new majority offers no articulable reasons whatsoever for its apparent detours from stare decisis. Instead, the majority declines to explain whether— and, if so, why—it is overruling precedent despite the obvious appearance that it is doing so. If it intends to alter legal principles embedded in this Court's decisions, the new majority should explain its reasons clearly and intelligibly. Instead, the new majority overrules by indirection, or at least leaves the impression that it is doing so, thereby sowing the seeds of confusion and making it difficult for the citizens of this state to comprehend precisely what our caselaw requires. This appears to be an unfortunate return to our predecessors' past practice of "frequently pa[ying] little attention to the

inconsistencies among its cases and declin[ing] to reduce confusion in [the Court's] jurisprudence by overruling conflicting decisions." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 571 n 19 (2005).

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 5, 2009

Clerk