SCOTT v STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

Docket No. 276544. Submitted April 8, 2008, at Lansing. Decided April
15, 2008, at 9:05 a.m. Leave to appeal sought.

Phyllis Scott, as coguardian of Kristen Krohn, an incapacitated
individual, and as coconservator of Kristen's estate, and Donald
Scott, as coguardian, and John Pfeffer, as coconservator,
brought an action in the Ingham County Probate Court, seeking
an order requiring State Farm Mutual Automobile Insurance
Company to pay the cost of medication to treat Kristen's
high-cholesterol problem. The plaintiffs alleged that the prob-
lem was, in part, the result of the effect of injuries that Kristen
had sustained in an automobile accident. Kristen had received
personal protection insurance benefits from State Farm for her
care, recovery, and rehabilitation following the accident. The
probate court, R. George Economy, J., denied a motion for
summary disposition by State Farm. The Ingham Circuit Court,
Beverley Nettles-Nickerson, J., denied State Farm's application
for leave to appeal from that order. State Farm appealed, by
leave granted, the denial of its application for leave to appeal in
the circuit court.

The Court of Appeals held:

The plaintiffs presented evidence sufficient to raise a genu-
ine issue of material fact over whether Kristen's high-
cholesterol problem is one "arising out of" the accident. MCL
500.3105(1). It is well settled that the term "arising out of"
requires more than an incidental, fortuitous, or but-for causal
connection, but does not require direct or proximate causation.
Almost any causal connection or relationship will do. The use of
the motor vehicle need only be one of the causes of the injury.
There may be other independent causes. Although a genetic
predisposition to have high cholesterol is apparently present in
this case, there is no authority supporting the defendant's claim
that, for purposes of personal protection insurance, a plaintiff
must exclude all other possible causes.

Affirmed.

*Miller & Tischler, P.C.* (by *Dale F. Kelly*), for the plaintiffs.

*Secrest Wardle* (by *Janet Callahan Barnes*) for the defendant.

Before: WILDER, P.J., and MURPHY and METER, JJ.

PER CURIAM. In this case regarding injuries sustained in an auto accident, plaintiffs seek first-party personal protection insurance benefits for the cost of cholesterol medication for Kristen Krohn (Krohn). The Ingham County Probate Court denied a motion for summary disposition by defendant State Farm Mutual Automobile Insurance Company. Defendant appeals, by leave granted,[1] the Ingham Circuit Court's denial of defendant's application for leave to appeal the probate court's ruling. We affirm.

Krohn (formerly known as Kristin Scott[2]) was involved in a motor-vehicle accident in 1981, three days before her 18th birthday. She sustained a brain injury and other injuries. Over the years following the accident, Krohn received personal protection insurance benefits from State Farm for her care, recovery, and rehabilitation.

Plaintiffs first became aware that Krohn had a high-cholesterol problem about 1991. For a few years, the problem was treated through exercise and a restricted diet. Over time, Krohn's cholesterol fluctuated but

---

[1] *Scott v State Farm Mut Automobile Ins Co*, unpublished order of the Court of Appeals, entered September 20, 2007 (Docket No. 276544).

[2] Plaintiff Phyllis Scott is Krohn's mother, her coguardian, and a coconservator of her estate. Plaintiff Donald Scott is her father and her coguardian. Plaintiff John Pfeffer is a coconservator of her estate and is an accountant from Brighton, Michigan.

mostly remained high.[3] According to plaintiff Phyllis Scott, Dr. Shirley J. Robertson was the doctor who prescribed cholesterol medication for Krohn. Krohn began taking Zocor for high cholesterol in 1997.

Between 1991 and sometime in 1997, Krohn's cholesterol was managed through a restricted diet and exercise. During this time, according to Phyllis, Krohn did exercise on a regular basis and had a personal trainer, but her weight increased. In September 1997, Dr. Martin A. Jacobson wrote a letter to a State Farm adjuster, confirming an earlier discussion, and opining that Krohn's hyperlipidemia was directly related to the sequelae from her auto accident. The doctor noted that since the accident Krohn was not able to do as much exercise as she should, but mainly she had impairment of self-control from her head injury, which made it hard for her to eat a reasonable diet. Dr. Jacobson added that he would make another attempt to help Krohn with her diet by sending her to a nutritionist. This was done.

In May 2003, Dr. Michael T. Andary, who was treating Krohn, made a chart note following a physical examination of Krohn. Krohn was having significant problems with her right leg. When she sat for long periods in a car and started to stand, she got significant pain. The pain was in the posterior part of the knee and the upper part of the calf. Krohn told Dr. Andary that the pain began while she was riding her bike during an exercise program. Krohn was afraid that doing more exercise would make the problem worse. Krohn reported pain down into her foot, severe enough that she had been using a wheelchair around the house. Dr. Andary reported that Krohn had a very ataxic gait and used a cane. Regarding the right-knee pain, Dr. Andary iden-

---

[3] Plaintiff Phyllis Scott has been diagnosed with a high-cholesterol problem since 1994. Thus, Krohn has a family history of high cholesterol.

tified numerous possible contributing causes, including the accident. Regarding Krohn's cholesterol problem, Dr. Andary opined that it was causally related to the auto accident, stating:

> It is my view that this *hypercholesterolemia is at least partially related to her traumatic brain injury. Her inability to exercise influences her weight. Additionally her cognitive problems influence her eating behaviors.* Her treatment for hypercholesterolemia in my view should be covered by her Auto No Fault insurance. [Emphasis added.]

Dr. Andary's recommendations included obtaining an MRI (magnetic resonance imaging) of the right knee and that Krohn refrain from further exercise pending the MRI results. The record does not indicate when, if ever, Dr. Andary recommended resumption of an exercise program.

Later, the Zocor was not as effective as Dr. Robertson had wanted it to be, so she added Zetia around December 2003. In or around 2004, Krohn was prescribed Vytorin, a combination of Zocor and Zetia. State Farm refused to pay for Zetia or Vytorin, contending that the need for it was insufficiently related to the 1981 motor-vehicle accident. Plaintiffs commenced this action in the probate court. Defendant moved for summary disposition, which the probate court denied. Defendant filed an application for leave to appeal in the circuit court, which the circuit court denied. We now affirm.

This case requires us to consider whether the cholesterol problem is one "arising out of" the injuries sustained in the 1981 auto accident. MCL 500.3105(1). Statutory interpretation is a question of law, reviewed de novo. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007).

Michigan's no-fault act, MCL 500.3101 *et seq.*, provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [MCL 500.3105(1).]

Payable benefits are defined as follows, in relevant part:

> (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. [MCL 500.3107(1)(a).]

In *Putkamer v Transamerica Ins Corp of America* 454 Mich 626, 634-635; 563 NW2d 683 (1997), our Supreme Court stated:

> In reviewing the requirement of subsection 3105(1) that the injury arise out of the "use of a motor vehicle as a motor vehicle," this Court concluded that the Legislature has provided that *there should only be coverage where the causal connection between the injury and the use of the motor vehicle was more than incidental, fortuitous, or "but for."* See *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986.) See also *Bourne v Farmers Ins Exch*, 449 Mich 193, 198; 534 NW2d 491 (1995); *Marzonie v Auto Club Ins Ass'n*, 441 Mich 522, 530; 495 NW2d 788 (1992). [Emphasis added.]

*Putkamer's* statement was made in the context of deciding whether a woman who slipped and fell on ice while attempting to get into her parked car could recover personal protection insurance benefits. On undisputed facts, the Supreme Court held that "plaintiff established as a matter of law that her injury arose from the use of her parked motor vehicle as a motor vehicle . . . ." *Id*. at 627. The Court was primarily interpreting MCL 500.3106(1), which currently provides:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) [T]he injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

Thus, while not exactly on point, *Putkamer* is instructive.

Both parties cite *Kochoian v Allstate Ins Co*, 168 Mich App 1; 423 NW2d 913 (1988). Factually, the case is analogous, although, procedurally, it is not on point, because it does not involve summary disposition.

Kochoian suffered a heart attack nearly three months after he was injured in a motor-vehicle accident. He sought personal protection insurance coverage in the form of work-loss benefits, contending that the heart attack arose out of the accident. After a bench trial in which expert physician testimony was presented, the trial court entered a judgment of no cause of action, and denied a motion for a new trial or judgment notwithstanding the verdict. *Id.* at 3. Although the trial court erroneously used an incorrect standard of causation (requiring the heart attack to have been " 'directly traceable' " to the accident), this Court nevertheless affirmed, concluding that "even under the 'arising out of' standard plaintiff failed to prove his case by a preponderance of the evidence." *Id.* at 7. It further reasoned: "Indeed, our review of the record convinces us that the trial court was correct in concluding that

plaintiff's heart attack, far from being caused by his accident, instead constituted 'an independent disabling injury that prevented him from working.' " *Id.* This Court continued:

> We reach this conclusion while well aware that the term *"arising out of" does not require a showing of proximate causation, but rather something more than a showing that the causal connection between the injury and the use of the motor vehicle was merely incidental, fortuitous, or "but for."* *Thorton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986); *Krause v Citizens Ins Co of America,* 156 Mich App 438, 440; 402 NW2d 37 (1986); see also *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 313-314; 282 NW2d 301 (1979) . . . . In *Thornton, supra,* pp 659-660, the Supreme Court stated:
>
> "In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the 'use of a motor vehicle *as a motor vehicle.*' In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' The involvement of the car in the injury should be 'directly related to its character as a motor vehicle.' . . . Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than 'but for,' incidental, or fortuitous, there can be no recovery of PIP benefits." [Emphasis in original.]
>
> Whether an injury may be characterized as "arising out of" the use of a motor vehicle for purposes of no-fault personal protection benefits, and thus based on a relationship with the use of the motor vehicle which is more than merely incidental, fortuitous or "but for" with that use—or, put differently, is not so remote or attenuated as to preclude a finding that it arose out of the use of a motor vehicle—is a determination which depends on the unique facts of each case and, thus, must be made on a case-by-case

basis. In the present case, the facts reveal that plaintiff's parentage, habits and preexisting physical condition clearly predisposed him to the heart attack which occurred almost three months after his truck accident. He acknowledged, among other things, being overweight, having smoked heavily for thirty years, having parents who died of causes related to heart disease, having suffered from angina since 1980, and having high blood pressure since 1977. In view of these circumstances, we find little indeed to support plaintiff's assertion that his heart attack was caused by his use of the truck during his March 2, 1982, accident. [*Kochoian, supra* at 8-9 (emphasis in first paragraph added).]

In *Shinabarger v Citizens Mut Ins Co*, 90 Mich App 307, 313-314; 282 NW2d 301 (1979), this Court used other words to describe the "arising out of" test:

The relationship between use of the vehicle and the injury need not approach proximate cause.

"[T]he term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. That almost any causal connection or relationship will do .... Case law indicates that the injury need not be the proximate result of 'use' in the strict sense, but it cannot be extended to something distinctly remote. Each case turns on its precise individual facts. The question to be answered is whether the injury 'originated from', 'had its origin in', 'grew out of', or 'flowed from' the use of the vehicle." [Some internal quotation marks omitted; citations omitted.]

Similarly, in *Bradley v Detroit Automobile Inter-Ins Exch*, 130 Mich App 34, 42; 343 NW2d 506 (1983), this Court stated that the use of the motor vehicle need only be one of the causes of the injury; there may be other independent causes. " '[A]lmost any causal connection

or relationship will do.' " *Id.* (citation omitted). Thus, it is well settled that "arising out of" requires more than an incidental, fortuitous, or but-for causal connection, but does not require direct or proximate causation. *Kochoian, supra* at 8.

Here, plaintiffs responded to defendant's motion by producing evidence of a causal connection between the accident and the hyperlipidemia, and we consider that evidence in a light most favorable to plaintiffs. *McManamon v Redford Charter Twp*, 273 Mich App 131, 134; 730 NW2d 757 (2006). Plaintiffs presented testimony indicating that the accident caused brain and skeletal injuries, which make it difficult for plaintiff to exercise, and which contribute to poor judgment regarding diet. Plaintiffs also presented evidence that this difficulty in exercising and the poor diet contribute to hyperlipidemia. Plaintiffs are not required to establish direct or proximate causation. *Kochoian, supra* at 8-9. Almost any causal connection will do. *Bradley, supra* at 42. Although a genetic predisposition to hyperlipidemia is apparently present, there is no authority that, for purposes of personal protection insurance, a plaintiff must exclude other possible causes (as there is authority, for instance, when proximate causation is at issue in a traditional tort context[4]). Plaintiffs have presented evidence sufficient to raise a genuine issue of material fact. The chain of causation, under plaintiffs' theory, though somewhat attenuated, is not so long that its links are completely unable to support the burden of proof. There is testimony indicating that there is no objective test that can distinguish between a case of

---

[4] "[W]hile the evidence need not negate all other possible causes, this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Craig v Oakwood Hosp*, 471 Mich 67, 87-88; 684 NW2d 296 (2004) (internal quotation marks, brackets, and citations omitted).

hyperlipidemia caused genetically and one caused by independent factors. Thus, the trier of fact must decide whether the high-cholesterol problem is one "arising out of" the accident.

Affirmed.