BOERTMANN v CINCINNATI INSURANCE COMPANY

Docket No. 293835. Submitted November 3, 2010, at Detroit. Decided March 8, 2011, at 9:10 a.m.

Gale Boertmann brought an action in the Macomb Circuit Court seeking no-fault personal protection insurance benefits from Cincinnati Insurance Company for psychological injuries she suffered after seeing a vehicle collide with her son's motorcycle, causing his death. At the time of the accident, plaintiff was driving directly behind her son in a vehicle insured by defendant. The court, Peter J. Maceroni, J., initially granted defendant's motion for summary disposition but, on reconsideration, vacated that order and granted summary disposition in plaintiff's favor, ruling that her injuries arose out of the use of a motor vehicle as a motor vehicle under the no-fault act, MCL 500.3105(1). Defendant appealed.

The Court of Appeals held:

The trial court correctly concluded that plaintiff's injuries arose out of the use of a motor vehicle as a motor vehicle because her injuries were caused by witnessing the accident, not by the death of her son, and that she was therefore entitled to personal protection insurance benefits under the no-fault act. The fact that plaintiff was not involved in the accident does not place her injuries outside the scope of MCL 500.3105(1), nor does the fact that her injuries did not result from physical contact with a motor vehicle.

Affirmed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — MOTOR VEHICLES — USE OF MOTOR VEHICLES AS MOTOR VEHICLES.

An insured may be entitled to personal protection insurance benefits under the no-fault act for psychological injuries caused by witnessing the accident that killed the insured's child; the insured need not be involved in the accident itself or be injured by physical contact with a motor vehicle to be entitled to benefits (MCL 500.3105[1]).

*Mancini, Schreuder, Kline & Conrad, P.C.* (by *Ellen G. Schreuder* and *Drew Slager*), for plaintiff.

*Robert P. Hurley* for defendant.

Before: MURPHY, C.J., and METER and SHAPIRO, JJ.

METER, J. Defendant appeals as of right from a grant of summary disposition to plaintiff under MCR 2.116(C)(10). The undisputed evidence showed that plaintiff suffered psychological injuries from witnessing the death of her son in a motor vehicle accident. We hold that the trial court correctly concluded that plaintiff's injuries arose out of the use of a motor vehicle as a motor vehicle and that she was therefore entitled to no-fault personal insurance protection (PIP) benefits. Accordingly, we affirm.

On September 1, 2007, plaintiff was driving a motor vehicle that was insured by defendant. She was driving behind her son Chris, who was operating a motorcycle. Plaintiff saw a vehicle make a wide turn into Chris's path and saw the two vehicles collide. Plaintiff proceeded to the parking lot where Chris landed after the collision and went over to him. He was severely injured and was pronounced dead approximately 30 minutes after the collision.

After the accident, plaintiff was treated by licensed psychologists Robert Cornette and Vera Sekulov and was diagnosed as suffering from "post-traumatic stress disorder . . . and major depressive disorder, single episode, severe without psychotic features." An affidavit submitted by Drs. Cornette and Sekulov states:

> Gale's post-traumatic stress disorder is caused by her witnessing of the collision which killed her son. The traumatic incident in this case is the collision itself between Christopher's motorcycle and the car that we are

told cut him off. Gale continues to have nightmares involving car crashes in general and regularly dreams of dead bodies she does not recognize which are maimed in crashes, bodies laying in blood, with eyes and mouth open, dead people hanging with skin off, dead babies on pavement, and other gruesome sights. Recurrent images and thoughts of the accident marked diminished interest and ability to function, restricted affect and significant cognitive impairments.

Gale suffers from several physical manifestations of her post-traumatic stress disorder and depression. She suffers from insomnia related to her post-traumatic stress disorder and depression, extreme fatigue, nausea, nose bleeds, sleep loss, loss of appetite, nightmares, and severe headaches on a daily basis.

Plaintiff sought PIP benefits from defendant, which defendant refused to pay. Plaintiff thereafter brought this action to recover PIP benefits for wage loss, replacement services, and medical care and expenses.

Both parties filed motions for summary disposition under MCR 2.116(C)(10). The arguments focused on whether plaintiff's injuries[1] were injuries "arising out of the . . . use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). The trial court initially granted defendant's motion and denied plaintiff's motion. The court found instructive *Williams v Citizens Mut Ins Co of America*, 94 Mich App 762, 763-765; 290 NW2d 76 (1980) (finding an inadequate causal connection when the plaintiff incurred psychological injury following the death of her child in a motor vehicle accident that she had not observed), and *Keller v Citizens Ins Co of America*, 199 Mich App 714, 715-716; 502 NW2d 329 (1993) (finding an inadequate causal connection when the plaintiff heard the screech of a vehicle's tires before the vehicle struck the plaintiff's child). The trial court

---

[1] That plaintiff had injuries was not contested.

explained, "The motor vehicle certainly contributed to cause the condition which produced plaintiff's injury in this matter, but the motor vehicle, itself, did not produce plaintiff's injury."

Plaintiff moved for reconsideration. The trial court granted reconsideration, vacated its prior opinion and order, and granted summary disposition to plaintiff. The court concluded that there was no caselaw indicating that no-fault benefits were not available where a claimant witnessed a motor vehicle collision that caused her injuries. The court found that *Williams* and *Keller* were distinguishable because plaintiff witnessed the collision in the present case. The court concluded that plaintiff had demonstrated a sufficient causal connection between her injury and the motor vehicle collision.

We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition may be granted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law."

We hold that the trial court correctly concluded that the undisputed evidence indicated that plaintiff's injuries arose out of the use of a motor vehicle as a motor vehicle.

MCL 500.3105(1) states: "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." "Arising out of" means that the causal connection between the injury and the use of the motor vehicle must be "more than incidental, fortuitous, or 'but for.' "

*Thornton v Allstate Ins Co*, 425 Mich 643, 659-660; 391 NW2d 320 (1986); see also *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578, 582, 584, 586; 751 NW2d 51 (2008) (quoting *Thornton*).[2] The statutory language does not require "direct or proximate causation." *Id*. at 586. However, the fact that a vehicle is the situs of an injury is not sufficient to establish the requisite causal connection. See, e.g., *Bourne v Farmers Ins Exch*, 449 Mich 193, 200; 534 NW2d 491 (1995). The determination whether an injury may be characterized as arising out of the use of a motor vehicle as a motor vehicle depends on the unique facts of each case and must be made on a case-by-case basis. *Kochoian v Allstate Ins Co*, 168 Mich App 1, 8-9; 423 NW2d 913 (1988).

In this case, the trial court correctly recognized that plaintiff's viewing of the collision was a critical distinction between this case and *Williams*, 94 Mich App 762. In *Williams*, the plaintiff's daughter suffered fatal injuries in a motor vehicle accident. *Id*. at 763. The plaintiff thereafter received psychiatric care. *Id*. at 764. The plaintiff did not see the accident or view her daughter's body within minutes of its occurrence. *Id*. This Court concluded that the plaintiff was not entitled to no-fault benefits, reasoning that the plaintiff's injury "did not arise out of the 'ownership, operation, maintenance or use of a motor vehicle'. Rather, her injury arose out of the death of her daughter which in turn arose out of the operation of a motor vehicle." *Id*. This Court stated that it took into consideration that the plaintiff did not have an available analogous tort recovery. *Id*. at 765. The Court explained that in Michigan,

---

[2] The Supreme Court initially vacated part of this Court's *Scott* decision. *Scott v State Farm Mut Auto Ins Co*, 482 Mich 1074 (2008). On reconsideration, however, the Court vacated its prior order. *Scott v State Farm Mut Auto Ins Co*, 483 Mich 1032 (2009).

> a plaintiff may recover for mental disturbance resulting in physical harm when an immediate family member is injured or exposed to injury by a negligent tortfeasor if the plaintiff is present at the time of the accident or peril or the shock is fairly contemporaneous with it. The plaintiff, however, cannot recover when he is informed of the matter at a later date. [*Id.*]

The Court expressly declined to reach "the issue of whether plaintiff would have a right to recovery under the no-fault act had she witnessed the accident or became [sic] aware of it at a time fairly contemporaneous with it." *Id.*

The facts in *Keller*, 199 Mich App 714, are more similar to the present case than are the facts in *Williams*. Plaintiff Margaret Keller was in her home when she heard the screech of tires and immediately went outside. *Id.* at 715. She saw her son's body lying in the street where he had been struck by an automobile. *Id.* Her no-fault insurer denied first-party PIP benefits for her psychiatric treatment. *Id.* This Court followed *Williams*, reasoning:

> We decline to distinguish *Williams* as plaintiffs urge us to do, and find that decision dispositive here. Margaret Keller was not injured by the automobile that struck her son. Instead, Keller's mental distress was the result of her son's tragic death, wholly independent of the cause of that death. Her injury would have been the same had the boy's death arisen from an attacking dog or from a stray bullet, for example. Because the injury suffered by Keller had only a "but for," incidental, and fortuitous connection with the use of an automobile, it was outside the scope of coverage intended by MCL 500.3105; MSA 24.13105. Accordingly, we find no error in the decision of the trial court. [*Keller*, 199 Mich App at 716.]

We conclude that evidence from plaintiff's psychologists distinguishes this case from *Keller*. This Court

stated in *Keller* that the plaintiff's injury was the result of her son's death. *Id.* In contrast, according to plaintiff's psychologists, plaintiff's injuries were the result of her having witnessed the fatal collision.[3] The psychologists' affidavit states that "Gale's post-traumatic stress disorder is caused by her witnessing of the collision which killed her son. The traumatic incident in this case is the collision itself between Christopher's motorcycle and the car that we are told cut him off." The affidavit indicates that "[r]ecurrent images and thoughts of the accident marked diminished interest and ability to function, restricted affect and significant cognitive impairments." Accordingly, it is evident that plaintiff's depression, too, is inextricably tied to the witnessing of the accident and to the posttraumatic stress disorder. Defendant did not present any evidence to counter the psychologists' affidavit.

The distinction between the grief suffered upon a loved one's death and the distress upon viewing a traumatic event that causes death is discussed in *Wolfe v State Farm Ins Co*, 224 NJ Super 348, 352; 540 A2d 871 (1988):

> When confronted with accidental death, the reaction to be expected of normal persons . . . is shock and fright. It is the sensory perception of a shocking event which causes a separate, compensable injury. . . . [I]t is the plaintiff's perception which causes the perceiver to suffer a traumatic sense of loss. Such emotional distress is not the equivalent of grief from losing a loved one, but is inflicted by the trauma of seeing a loved one suffer or die or of seeing efforts to revive [the loved one] being unsuccessful. [Citations and quotation marks omitted.]

We find this distinction pertinent in the present case.

---

[3] We note that defendant does not contend that plaintiff's injuries were not "bodily injur[ies]" within the meaning of MCL 500.3105(1).

Defendant contends that, at a minimum, a claimant must be "actually involved" in an accident to recover no-fault benefits. Defendant does not clearly provide suggested parameters for the phrase "actually involved." To the extent defendant is contending that the injuries must arise from the claimant's *own* operation, use, ownership, or maintenance of a motor vehicle, caselaw does not support the argument. For example, a pedestrian may recover for injuries caused by lye that splashed up when a motor vehicle drove through a puddle. See *Jones v Tronex Chem Corp*, 129 Mich App 188, 191-193; 341 NW2d 469 (1983). Similarly, a passerby may recover for injuries caused by steam released when another person who was maintaining his vehicle opened a cap on the radiator. See *McMullen v Motors Ins Corp*, 203 Mich App 102, 103, 105; 512 NW2d 38 (1993). The Court in *McMullen* stated, "[N]othing in the language of the no-fault act requires that the injured person be the individual actually maintaining the vehicle in question." *Id.* at 107. These claimants' injuries entitled them to no-fault benefits even though the injuries did not result from their own operation, use, ownership, or maintenance of a motor vehicle. Similarly, plaintiff's injuries need not result from her own use of a motor vehicle to fall within the scope of MCL 500.3105(1).

To the extent that defendant is claiming that there must be physical contact between the claimant and the motor vehicle, caselaw also does not support the argument. Indeed, the plaintiff in *Musall v Golcheff*, 174 Mich App 700; 436 NW2d 451 (1989), was not injured by physical contact with the motor vehicle. He inserted coins in a machine to begin washing his vehicle. *Id.* at 701. The wash wand came loose from its holder and struck him. *Id.* This Court stated:

> We reject defendant's contention that since plaintiff's injury arose from contact with the wash wand, as opposed to contact with his truck, plaintiff's injury does not fall within the maintenance provision of the no-fault act. Defendant cites no authority for the proposition that injuries necessarily have to be received directly from the motor vehicle. A review of the case law does not support this narrow interpretation of the statute. [*Id.* at 704.]

Therefore, plaintiff's injuries need not result from physical contact with a motor vehicle to fall within the scope of MCL 500.3105(1).

In light of the specific facts of this case, see *Kochoian*, 168 Mich App at 8-9, especially the undisputed evidence presented by the psychologists, we hold that the trial court correctly concluded that plaintiff's injuries arose out of the use of a motor vehicle as a motor vehicle.

Affirmed.