**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0175n.06

No. 10-1512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**_Feb 13, 2012_**

LEONARD GREEN, Clerk

|                                      |     |                                   |
| ------------------------------------ | --- | --------------------------------- |
| SHERRY BERRY,                        | )   |                                   |
|                                      | )   |                                   |
|    Plaintiff-Appellant, | )   |                                   |
|                                      | )   | ON APPEAL FROM THE UNITED         |
| v.                                   | )   | STATES DISTRICT COURT FOR         |
|                                      | )   | THE EASTERN DISTRICT OF           |
| ALLSTATE INSURANCE COMPANY,          | )   | MICHIGAN                          |
|                                      | )   |                                   |
|    Defendant-Appellee. | )   |                                   |

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

GWIN, District Judge. Sherry Berry, a Michigan citizen, appeals a district court order denying her motion for a new trial in a diversity breach of contract action that she filed against her automobile insurance company. She argues that the district court erred when it allowed the defendant to offer opinion evidence of a board certified neurologist. That neurologist gave opinion testimony that Berry's preexisting hypertension caused cerebral hemorrhage and that Berry's automobile collision did not cause her hemorrhage. Berry also argues that the district court erred during instructions to the jury and erred in allowing live testimony from a witness who defendant originally said would be presented through a deposition. For the reasons described below, we affirm.

On December 8, 2006, Berry was involved in a motor vehicle accident when her car struck a car parked on the side of the road. She was taken to the hospital, where she was treated for a cut lip, a laceration to her hand, and a cerebral hemorrhage. Berry sued her insurance carrier to recover

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

the medical costs and resultant damages from the cerebral hemorrhage. With her case, she claimed that her head injury resulted when she struck her head on the windshield of her car during the accident. Berry made this claim even though her main problem was a thalamus-area bleed in one of the brain's deepest structures. In contrast to Berry's argument that the accident *caused* the center brain bleeding, the defendant said that the brain hemorrhage resulted from a preexisting hypertensive condition and the accident followed–and did not create–this condition.

Berry moved the court to stop defendant from presenting any expert testimony on the issue of whether she suffered from high blood pressure prior to the accident. The district court denied the motion. Berry also moved to preclude the use of depositions of the medical experts in lieu of live testimony. The district court denied the motion, but ruled that the depositions could only be used if the witnesses were shown to be unavailable. At trial, the defense presented a neurologist who gave the opinion that Berry suffered a spontaneous intracerebral hemorrhage, and this hemorrhage caused her to wreck her car. It argued that Berry's damages did not arise out of the use of her automobile, and that she could not recover damages under Michigan No-Fault Act. The jury found for the defendant. Berry's motion for a new trial was denied, and this appeal followed.

Berry now argues that the district court erred in allowing the defense to present opinion testimony that she suffered from hypertension before the accident; rejecting her proposed jury instructions; allowing the defense to depose two witnesses who later testified at trial; and denying her motion for a new trial where the jury's verdict was arguably inconsistent and against the weight of the evidence.

We review a district court's decision to admit expert testimony for an abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Berry argues that the district court failed to fulfill its function of determining whether the defense experts' testimony rested on a reliable foundation and whether their reasoning was scientifically valid. *See Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009). Contrary to Berry's

argument, the expert testimony that she suffered from hypertension prior to the accident was sufficiently based on evidence. Defendant showed that the expert testimony was sufficiently relevant and sufficiently reliable. Although Berry had never been diagnosed with or treated for hypertension, she did have two blood pressure readings, taken by her treating physician, of 146/92 in 2005 and 140/90 in 2006. Also, the defendant offered post-accident evidence showing that Berry exhibited indications of white matter disease. Testimony supported that white matter disease is most likely due to chronic hypertension.

Further, Berry admitted that she had a headache prior to the accident and could not explain why she was on the street where the accident occurred. Therefore, sufficient evidence supported the experts' testimony that Berry likely suffered from hypertension before the accident. Although Berry gave evidence that a collision could cause the bleed to the deep brain thalamus area, other evidence suggested that "her hemorrhage is not in the classic location for a traumatic type of hemorrhage." Berry did not show that the experts' methodology was in any way unscientific or unreliable. Therefore, no abuse of discretion in the district court's evidentiary ruling has been established.

Berry next argues that the district court erred in rejecting her proposed jury instructions. While we review the rejection of a proposed jury instruction for an abuse of discretion, *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000), we review the correctness of the jury instructions de novo. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998).

Berry relies on *Scott v. State Farm Mut. Auto. Ins. Co.*, 751 N.W.2d 51, 56 (Mich. App. 2008), for the proposition that she was not required to exclude other possible causes of her damages in order to recover. In *Scott*, the plaintiff presented testimony showing how the accident contributed to her medical problems. *Id.* Here, plaintiff's expert was unable to explain how—if the jury believed that the hemorrhage preceded the accident—the accident could have worsened Berry's hemorrhage. Berry, whose case rested on the theory that she did *not* have a preexisting condition, failed to "present substantial *evidence* from which [the] jury" could conclude that the accident merely

contributed to, rather than caused, her injury. *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F.Supp 2d 752, 769 (E.D. Mich. 2010) (applying Michigan state-law) (emphasis in original). Berry's expert did, at one point, comment that "[the hemorrhage] could also certainly be made significantly worse," by the accident. But to "rely on alternative theories of causation," a plaintiff "must support each theory with admissible evidence, and may not rely on conjecture or speculation." *Walk v. Baker Coll. of Auburn Hills*, No. 299925, 2011 WL 5555828, at \*5 (Mich. Ct. App. Nov. 15, 2011) (citing *Skinner v. Square D. Co.*, 516 N.W.2d 475, 480 (Mich. 1994)). Thus, while Berry was not required to exclude all other possible causes, she did not present sufficient evidence to support an alternative theory.

Furthermore, in *Nowyorkas v. Farm Bureau Mut. Ins. Co.,* No. 168726, 1996 WL 33681826 (Mich. App. May 24, 1996), the Michigan appellate court held that injuries that cannot be attributed to a single identifiable event are excluded from coverage under the Michigan No Fault Act. Berry's remaining challenges to the jury instructions involve the instructions as to the amount of damages. But given the jury's verdict in favor of the defendant, any issue with the damage instructions does not matter. Therefore, we find no abuse of discretion in the district court's rulings.

Berry also argues that the district court should not have allowed the defendant to depose two of its expert witnesses before trial for possible use at trial. These defense expert witnesses ultimately did testify at trial. Berry offers the novel argument that the depositions unfairly allowed the witnesses to better prepare for cross-examination and precluded the jury from observing the unprepared cross-examination at the depositions. She cites *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990), for the proposition that the proponent of a deposition must establish that the witness is unavailable. However, Berry earlier asked to stop the use of depositions in lieu of live testimony. But after these expert witnesses did testify at trial, Berry now complains that the earlier depositions allowed the experts to better prepare. She cites no authority for the argument that the depositions should have been prohibited to prevent the witnesses from learning her trial strategy.

Finally, citing *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996), Berry argues that she was entitled to a new trial because the jury's decision to award no damages was not one it could have reasonably reached. We review the denial of a motion for a new trial for an abuse of discretion. *Nolan v. Memphis City Sch.*, 589 F.3d 257, 264 (6th Cir. 2009). Here, Berry's argument is contradicted by her attorney's concession that the jury could have concluded that only her lip and hand injuries were caused by the accident, and that damages for those injuries were not at issue. Because the verdict reached in this case was reasonable, the district court did not abuse its discretion in denying Berry's motion for a new trial. *See J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).

For all of the above reasons, the district court's judgment is affirmed.

**JANE B. STRANCH, Circuit Judge, dissenting.** I respectfully dissent because I believe the district court erred in rejecting two of Berry's proposed jury instructions. One of these instructions came directly from a recent Michigan Supreme Court case while the other accurately reflects Michigan law and was crucial to Berry's alternative argument that her brain injury was exacerbated by the accident. Accordingly, I would hold Berry is entitled to a new trial at which these instructions should be given.

The Michigan No-Fault Act requires insurers to pay benefits to the insured "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws § 500.3105(1). The term "arising out of" is not defined in the statute. Consistent with the statute, the trial court instructed the jury that the plaintiff had the burden of proof to show that her "injuries arose out of the operation of a motor vehicle." Berry requested the following as part of the causation instruction:

> In order to recover no-fault benefits from her insurance company, Plaintiff is not required to establish direct or proximate causation. Almost any causal connection will do. Plaintiff is not required to exclude other possible causes of her problems in order to recover against Defendant.

She also requested the following instruction on apportionment of damages for preexisting injuries, which is a modified version of Mich. Model Civ. Jury Instr. 50.11:

> If an injury suffered by Ms. Berry is a combined product of both a preexisting condition and the effects of the automobile accident, it is your duty to determine and award damages caused by the accident alone. You must separate the damages caused by the accident from the condition which was preexisting if it is possible to do so. However, if after careful consideration, you are unable to separate the damages caused by the accident from those which were preexisting, then the entire amount of plaintiff's damages must be assessed against the defendant.

Both instructions were denied. Berry argues that these denials were erroneous and prejudicial because they (1) allowed the insurance company to impose a higher standard of causation (that of a single, sole cause) and (2) prevented the jury from finding that, even if she had a brain hemorrhage just before the accident, the accident exacerbated this preexisting injury. Instead, the jury had to make an "all or nothing" decision that the crash either caused the hemorrhage or it did not.

The majority opinion first rejects Berry's citation to *Scott v. State Farm Mutual Automotive Insurance Co.*, 751 N.W.2d 51 (Mich. Ct. App. 2008), *vacated in part*, 758 N.W.2d 249 (Mich. 2008), *aff'd on reh'g*, 766 N.W.2d 273 (Mich. 2009):

> In *Scott*, the plaintiff presented testimony showing how the accident contributed to her medical problems. *Id.* Here, plaintiff's expert was unable to explain how—if the jury believed that the hemorrhage preceded the accident—the accident could have worsened Berry's hemorrhage.

This is at odds with the record. Berry's expert testified:

> [The hemorrhage] could certainly occur with the type of force that was delivered. It could also certainly be made significantly worse with the significant jostling of the brain due to the force delivered, as well as the concurrent rise in blood pressure due to the accident and her emotional reaction to it.

The expert further testified that a subsequent head injury can have an effect that is "synergistic rather than just additive," using as an example the fact that an NFL quarterback had been held out of a game after sustaining a head injury in an earlier game. During closing arguments, Berry's attorney reminded the jury that her expert testified, "the accident caused the intracranial bleed. If it didn't, it made it worse." Although it is clear from the record that Berry's argument and her expert's testimony was primarily based on the theory that the accident completely caused her injury, it is equally clear that evidence of the alternative theory of exacerbation was also presented

to the jury. *See Robelin v. Spectrum Health Hosp.*, 791 N.W.2d 466, 469 (Mich. 2010) (stating that "evidence" includes "expert testimony"); *Walk v. Baker Coll. of Auburn Hills*, No. 299925, 2011 WL 5555828, at *5 (Mich. Ct. App. Nov. 15, 2011) (citing *Skinner v. Square D Co*, 516 N.W.2d 475 (Mich. 1994)) (permitting "alternative theories of causation" if supported by evidence).

The majority opinion cites only one case which actually purports to support its conclusion on this issue, *Nowyorkas v. Farm Bureau Mutual Insurance Co.*, No. 168726, 1996 WL 33681826 (Mich. Ct. App. May 24, 1996). *Nowyorkas*, which is unpublished and has never been cited by a Michigan state court, itself cites only one case as support for its holding that "an injury which could not be attributed to a single identifiable event was excluded from coverage under the no-fault act." *Id.* at *1 (citing *Williams v. Detroit Auto. Inter-Ins. Exch.*, 425 N.W.2d 534 (Mich. Ct. App. 1988)). Taking another step back to the decision cited in *Williams* for this proposition, we learn that the term "single identifiable event" is intended to distinguish an injury resulting from an accident from injuries arising "from a series of events spanning many years"—in that case a chronic back injury sustained by nineteen years of truck driving— and does so primarily because the No Fault Act frequently uses the term "accident." *Wheeler v. Tucker Freight Lines Co., Inc.*, 336 N.W.2d 14, 16 (Mich. Ct. App. 1983). *Williams* did not turn on this distinction because, although there was a car accident, the plaintiff's own doctor attributed the claimed injury to an earlier work injury rather than the accident. 425 N.W.2d at 536. Here, as Berry observes, there is a single identifiable event to which the injury (or at least its exacerbation) could be attributed, the car accident, to which Berry's doctor attributed all or part of the injury.

In their briefs, both parties cited several more recent and relevant cases, including decisions by the Michigan Supreme Court which address these issues. Most beneficially for Berry, the Michigan Supreme Court used language very similar to that of the first proposed jury instruction quoted above when discussing "the causal nexus required in a no-fault case involving injury":

> [E]vidence establishing almost any causal connection will suffice when it is more than merely fortuitous, incidental, or but for. But it need not be much more; almost any causal connection or relationship will do.

*Scott v. State Farm Mut. Auto. Ins. Co.*, 766 N.W.2d 273, 275 (Mich. 2009) (Kelly, C.J., concurring). This decision vacated the court's earlier reversal of *Scott*.[1] It upheld the determination of the Michigan Court of Appeals that there was a question of fact as to whether a plaintiff could recover no-fault insurance coverage for her cholesterol medication under the "somewhat attenuated" theory that a previous car accident a decade earlier caused her high-cholesterol problem by preventing her from exercising and eating properly. *Scott*, 751 N.W.2d at 56. The court reached this conclusion despite the fact that "a genetic predisposition to [the condition] is apparently present" because "there is no authority that, for purposes of personal protection insurance, a plaintiff must exclude other possible causes." *Id.*; *see also In re Estate of Favazza*, No. 294705, 2011 WL 566830, at *3 (Mich. Ct. App. Feb. 17, 2011) (citing *Scott* for proposition that "[t]he motor vehicle accident need only be one of the causes of the injury, as there may be other independent causes."). Exacerbation of an existing hemorrhage by hitting one's head on a windshield is surely less attenuated causation than the alleged cause of injury in *Scott*.

---

[1]Allstate relies heavily on the first, vacated Michigan Supreme Court decision without accounting for its reversal. This is improper and undercuts Allstate's analysis as it is the second supreme court decision, and the reinstated court of appeals opinion, that govern this case.

Under Michigan law, "[i]f an instruction is applicable to the case, accurately states the law, and was requested, the trial court must give it." *Whitman v. City of Burton*, — N.W.2d —, No. 294703, 2011 WL 2622315 (Mich. Ct. App. July 5, 2011) (citing *Lewis v. LeGrow*, 670 N.W.2d 675 (Mich. Ct. App. 2003)). I believe the first instruction meets these criteria because causation was a significant issue in the case, the language came directly from a published decision which had recently been upheld by the state high court, and it was requested.

As to the second rejected instruction, Mich. Model Civ. Jury Instr. 50.11 allows juries to apportion damages when "an injury suffered by plaintiff is a combined product of both a preexisting *[disease/injury/state of heath]* and the effects of defendant's negligent conduct." If a jury is unable to separate the damages, the entire amount must be assessed against the defendant. A recent unpublished decision held that this "instruction is a negligence instruction that simply does not apply in first party, no-fault insurance litigation." *Chalko v. State Farm Mut. Auto Ins. Co.*, No. 278215, 2009 WL 2003320, at *3 (Mich. Ct. App. July 9, 2009). However, the court made clear that the plaintiff had requested only an *unmodified* version of the instruction and "did not in any way preserve the notion that this standard instruction should be modified." *Id.* This suggests that a modified instruction to account for the no-fault circumstances, such as Berry's, might have been proper.

A lengthy dissent in *Chalko* argued that some type of pre-existing injury instruction was required because "[i]t is clear that first party no-fault insurance does provide for coverage for services that result from a combination of conditions so long as one of those conditions is an auto accident injury." *Id.* at *7 (Shapiro, J., dissenting) (citing *Morales v. State Farm Mut. Auto. Ins. Co.*,

761 N.W.2d 454 (2008)).[2]  Judge Shapiro observed that "M Civ JI 50.11 is not in the 'negligence' section of the model jury instructions, but instead in the 'damages' section and so can be readily adapted to non-negligence cases." *Id.* at \*6.  He also noted that, like Berry, the plaintiff offered evidence of a much stronger causal connection than in *Scott*. *Id.* at \*8.  As a result of these concerns, a mere "arising out of" instruction without an instruction accounting for a "combination" injury constituted reversible error because "it resulted in a failure to 'adequately and fairly' present 'the theories of the parties and the applicable law.'" *Id.* at \*7, 9 (quoting *Case v. Consumers Power Co.*, 651 N.W.2d 17, 19 (Mich. 2000)); *see also Kelmendi v. Citizens Ins. Co. of Am.*, No. 264019, 2007 WL 419786, at \*1 (Mich. Ct. App. Feb. 8, 2007) (stating that combination injury instruction, such as Mich. Model Civ. Jury Instr. 50.11, "may have been useful to instruct the jury on how to evaluate [a] plaintiff's claim alleging aggravation of his pre-existing injuries" in a no-fault case).

Under Michigan law, jury instructions "should not omit material issues, defenses, or theories if the evidence supports them." *Whitman*, — N.W.2d at —, 2011 WL 2622315 (quoting *Case*, 615 N.W.2d at 19).  Without the requested modified 50.11 instruction (or the one discussed above), Berry's alternative theory of exacerbation was entirely omitted from the jury instructions, leaving the jury without any explanation as to what "arising out of" means.  Although this instruction may have related more to damages than causation, it would have nonetheless made clear to the jury that apportioned damages—and thus exacerbation of injury—was a viable option for its verdict. *See*

---

[2]In *Morales*, the court held that the jury was properly allowed to consider whether the plaintiff's preexisting condition became disabling after, or because of, a car accident in a no-fault insurance action.  761 N.W.2d at 465.  The court did not consider the adequacy of the jury instructions because the plaintiff prevailed and the defendant assented to the instructions given. *Id.*

*Chalko*, 2009 WL 2003320, at \*6 (quoting *Case*, 615 N.W.2d at 19) (noting appellate courts review instructions "as a whole").

For the reasons above, I believe the district court committed reversible error in denying Berry's proposed jury instructions and I would grant a new trial.