# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## McPHERSON v McPHERSON

Docket No. 144666. Argued January 10, 2013. Decided April 11, 2013.

Ian McPherson brought an action in the Oakland Circuit Court against Christopher McPherson, Progressive Michigan Insurance Company, and others, seeking payment of personal protection insurance benefits under the no-fault act, MCL 500.3101 *et seq*. Plaintiff developed a neurological disorder as a result of injuries sustained in a 2007 motor vehicle accident while he was a passenger in a vehicle driven by Christopher McPherson. Subsequently, in 2008, while driving a motorcycle, he experienced a seizure consistent with that disorder, lost control of the motorcycle, crashed into a parked car, and sustained a severe spinal cord injury that left him quadriplegic. Plaintiff claimed entitlement to no-fault benefits for the spinal cord injury, asserting that the 2008 spinal cord injury arose out of the 2007 accident for purposes of MCL 500.3105(1). Progressive moved for partial summary disposition. The court, Rae Lee Chabot, J., denied the motion. On leave granted, the Court of Appeals, METER and GLEICHER, JJ. (K. F. KELLY, P.J., dissenting), affirmed in an unpublished opinion per curiam, issued January 10, 2012 (Docket No. 299618). Progressive applied for leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action. 493 Mich 853 (2012).

In a memorandum opinion signed by Chief Justice YOUNG and Justices MARKMAN, MARY BETH KELLY, ZAHRA, and MCCORMACK, the Supreme Court *held*:

Under MCL 500.3105(1), a provider of personal protection insurance benefits is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. An injury arises out of the use of a motor vehicle as a motor vehicle when the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." Given that plaintiff's spinal cord was injured in the 2008 motorcycle crash, which was caused by his seizure, which was caused by his neurological disorder, which was caused by his use of a motor vehicle as a motor vehicle in 2007, the spinal cord injury was simply too remote and too attenuated from the earlier use of a motor vehicle to permit a finding that the causal connection between the 2008 injury and the 2007 accident was more than incidental, fortuitous, or "but for." The facts alleged by plaintiff were insufficient to support a finding that the first injury caused the second injury in any direct way. Absent the intervening motorcycle accident, plaintiff's spinal cord injury would not have occurred as a direct result of the neurological disorder. The trial court erred by failing to grant

summary disposition in favor of Progressive, and the Court of Appeals erred by affirming that decision.

Court of Appeals' judgment reversed; case remanded for entry of summary disposition in favor of Progressive.

Justice CAVANAGH, dissenting, would not have granted summary disposition in favor of Progressive. Because it is undisputed that Progressive is responsible for first party no-fault benefits related to the 2007 motor vehicle accident and plaintiff's physician attributed the symptoms that plaintiff experienced in 2008 to the disorder that arose out of the 2007 motor vehicle accident, plaintiff's fall during his 2008 seizure was not an intervening cause. Rather, it was an inextricable aspect of his seizure disorder, and any injuries sustained during the loss of consciousness and fall in 2008 arose out of the 2007 motor vehicle accident that caused the seizure disorder.

Justice VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# OPINION

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED APRIL 11, 2013

S T A T E   O F   M I C H I G A N

SUPREME COURT

IAN McPHERSON,

      Plaintiff-Appellee,

v                               No. 144666

CHRISTOPHER McPHERSON and AAA
AUTO CLUB GROUP INSURANCE
COMPANY,

      Defendants,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant/Cross-Plaintiff-
      Appellant,

and

AUTO CLUB INSURANCE
ASSOCIATION, MEMBERSELECT
INSURANCE COMPANY, and AUTO
CLUB INSURANCE COMPANY,

      Defendants/Cross-Defendants.

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

MEMORANDUM OPINION.

Plaintiff developed a neurological disorder as a result of injuries sustained in a 2007 motor vehicle accident. Subsequently, in 2008, while driving a motorcycle, he experienced a seizure consistent with that disorder, lost control of the motorcycle, crashed into a parked car, and sustained a severe spinal cord injury that left him quadriplegic. Plaintiff did not assert that he was entitled to no-fault benefits for the spinal cord injury as a result of the *2008* crash.[1] Rather, he claimed that he was entitled to no-fault benefits for the spinal cord injury as a result of the *2007* accident, asserting that the spinal cord injury "ar[ose] out of" the 2007 accident for purposes of MCL 500.3105(1). Defendant Progressive Michigan Insurance Company moved unsuccessfully for partial summary disposition in the trial court, and the Court of Appeals affirmed on leave granted.[2] We ordered and heard oral argument on whether to grant Progressive's application for leave to appeal or take other peremptory action.[3]

Given that there is no dispute regarding the material facts and that the parties agree that the 2007 accident involved the use of a motor vehicle as a motor vehicle and that

[1] Plaintiff apparently anticipated that he could not recover no-fault benefits from the 2008 crash because a motorcycle is not a "motor vehicle" for purposes of the no-fault act, MCL 500.3101(2)(e), and none of the exceptions that allow recovery in an accident involving a parked motor vehicle seem applicable, see MCL 500.3106.

[2] *McPherson v McPherson*, unpublished opinion per curiam of the Court of Appeals, issued January 10, 2012 (Docket No. 299618). Progressive argued below that plaintiff could not recover first-party no-fault benefits because he had no insurance for his motorcycle. This was the basis for a Court of Appeals dissent. Progressive now concedes that there was, in fact, insurance for the motorcycle and has abandoned this argument.

[3] *McPherson v McPherson*, 493 Mich 853 (2012).

plaintiff is entitled to personal protection insurance (PIP) benefits from Progessive for all injuries "arising out of" that accident, including the neurological disorder, the only question here is whether the *spinal cord injury* plaintiff suffered in the 2008 crash "ar[ose] out of" the 2007 accident for purposes of MCL 500.3105(1).

Pursuant to MCL 500.3105(1), a PIP provider is liable "to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." In *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531 (2005), this Court explained this causal requirement:

> [A]n insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle . . . ." It is not *any* bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle.

Regarding the degree of causation between the injury and the use of the motor vehicle that must be shown, this Court has established that an injury arises out of the use of a motor vehicle as a motor vehicle when "the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.'" *Thornton v Allstate Ins Co*, 425 Mich 643, 659 (1986).

In this case, the causal connection between the 2008 spinal cord injury and the 2007 accident is insufficient to satisfy the "arising out of" requirement of MCL 500.3105(1).[4] Plaintiff did not injure his spinal cord while using the vehicle in 2007.

---

[4] Plaintiff's focus on the "causal genesis" of the injury is particularly misplaced. The question under *Thorton* is not whether the use of a motor vehicle constitutes the "causal genesis" of an injury, but whether the causal connection between the injury and the use of

3

Rather, he injured it in the 2008 motorcycle crash, which was caused by his seizure, which was caused by his neurological disorder, which was caused by his use of a motor vehicle as a motor vehicle in 2007. Under these circumstances, we believe that the 2008 injury is simply too remote and too attenuated from the earlier use of a motor vehicle to permit a finding that the causal connection between the 2008 injury and the 2007 accident "is more than incidental, fortuitous, or 'but for.'" *Thornton*, 425 Mich at 659.[5]

We reject plaintiff's argument that *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578; 751 NW2d 51 (2008), is relevant to this case. The Court of Appeals held in *Scott* that summary disposition was premature because the plaintiff had raised a genuine issue of material fact whether her hyperlipidemia occurred as a direct result of an injury she had received in an automobile accident or was attributable to other factors. That is, the issue was whether the evidence was sufficient to support a finding that the first *injury* caused the second *injury* in a direct way. In this case, plaintiff claims as fact that his

---

a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." This not only requires that the motor vehicle be used "as a motor vehicle" in the incident that gives rise to the injury, but also that the accidental bodily injury "aris[e] out of" that vehicular use.

[5] The dissent erroneously focuses on the existence of a causal connection between the "seizure" and the "fall," rather than on the causal connection between the 2008 spinal cord injury and the 2007 accident. *Post* at 4 ("Because plaintiff's fall was an inextricable aspect of his seizure, I believe that plaintiff can satisfy MCL 500.3105(1)."). Although we agree with the dissent that for purposes of this appeal it is assumed as fact that plaintiff's second seizure and resultant fall came about as a result of the neurological disorder suffered in the first accident, it does not follow, as the dissent concludes, that "the 2008 *injuries* were an inextricable result of [plaintiff's] seizure disorder" as well. *Post* at 4-5 (emphasis added). Indeed, had plaintiff been in bed or on the couch when he had the seizure, the "inextricable" injury would not have occurred.

4

spinal cord injury occurred as a result of the neurological disorder from the first accident in combination with the intervening motorcycle accident. The facts alleged by plaintiff are insufficient to support a finding that the first injury caused the second injury in any direct way. Rather, the facts alleged by plaintiff only support a finding that the first *injury* directly caused the second *accident*, which in turn caused the second injury. Thus, the second injury alleged by plaintiff is too attenuated from the first accident to permit a finding that the second injury was directly caused by the first accident. Though we are troubled by *Scott*'s use of a causal-connection standard this Court has never recognized— that "[a]lmost any causal connection will do," *id.* at 586—it is nonetheless clearly distinguishable from this case because plaintiff admits that, absent the intervening motorcycle accident, his spinal cord injury would not have occurred as a direct result of the neurological disorder.

Because plaintiff's spinal cord injury had only this limited causal connection to the use of a motor vehicle in 2007, the injury did not arise out of the use of a motor vehicle for purposes of MCL 500.3105(1). Accordingly, the trial court erred by failing to grant Progressive summary disposition on that basis, and the Court of Appeals erred by affirming that decision. In lieu of granting Progressive's application for leave to appeal, we reverse the judgment of the Court of Appeals and remand for entry of summary disposition in favor of Progressive.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

5

STATE OF MICHIGAN

SUPREME COURT

IAN McPHERSON,

      Plaintiff-Appellee,

v

CHRISTOPHER McPHERSON and AAA
AUTO CLUB GROUP INSURANCE
COMPANY,

      Defendants,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant/Cross-Plaintiff-
      Appellant,

and

AUTO CLUB INSURANCE
ASSOCIATION, MEMBERSELECT
INSURANCE COMPANY, and AUTO
CLUB INSURANCE COMPANY,

      Defendants/Cross-Defendants.

No. 144666

CAVANAGH, J. (*dissenting*).

I respectfully dissent because I believe that plaintiff is able to satisfy the requirement in MCL 500.3105(1) that his 2008 injuries "ar[ose] out of" his 2007 motor vehicle accident.

As the majority explains, there is no dispute that plaintiff's 2007 accident involved the use of a motor vehicle as a motor vehicle and that Progressive Michigan Insurance Company is statutorily obligated under MCL 500.3105(1) to provide personal protection insurance (PIP) benefits for all injuries "arising out of" that accident, including plaintiff's seizure disorder.

This Court has explained that coverage under MCL 500.3105(1) is available "only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.'" *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986). Thus, the motor vehicle must be the "instrumentality" of the injury. *Id*. at 660.

*Thornton*'s application is relatively straightforward when faced with an acute injury. For example, if an insured suffers a broken arm while involved in a motor vehicle accident, it is clear that the motor vehicle was the instrumentality of the broken arm because that injury occurred at the moment of the accident. Accordingly, the causal connection between the broken arm and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for."

Although slightly more difficult, applying *Thornton*'s logic to some chronic injuries is also fairly straightforward. For example, if an insured suffered a kidney injury in a motor vehicle accident and, after a period of time, required a kidney transplant because of the continuing deterioration of the kidney, it is clear that the need for the transplant, although separated from the accident by time, would nevertheless constitute a progression of the injury that occurred in the accident. Accordingly, the causal

2

connection between the need for the kidney transplant and the use of the motor vehicle as a motor vehicle would be more than incidental, fortuitous, or "but for."

This case, however, presents a difficult issue because of the chronic, yet intermittent, nature of the injury that plaintiff suffered in the 2007 motor vehicle accident. Accordingly, in order to properly apply *Thornton* and MCL 500.3105(1), it is necessary to understand the nature of a seizure disorder.

According to his physician, shortly after the 2007 accident plaintiff suffered a grand mal seizure. The physician testified that "posttraumatic seizure can happen at any time. You can have head trauma today, you can have a seizure from posttrauma [sic] two days later, you can have it a year later, you can have it the rest of your life." According to the Mayo Clinic, grand mal seizures have two phases—tonic and clonic—that exhibit different symptoms. In the tonic phase, "[l]oss of consciousness occurs, and the muscles suddenly contract and *cause the person to fall down*." Mayo Clinic, Grand Mal Seizure <http://www.mayoclinic.com/health/grand-mal-seizure/DS00222/DSECTION= symptoms> (accessed April 2, 2013) (emphasis added). In the clonic phase, "[t]he muscles go into rhythmic contractions, alternately flexing and relaxing. Convulsions usually last for less than two minutes." *Id.*

Thus, a person with a seizure disorder may go long periods without exhibiting any signs of the disorder. However, even during those nonsymptomatic periods, the person nevertheless has a seizure disorder, and in plaintiff's case, the seizure disorder arose out of the use of a motor vehicle as a motor vehicle. Unlike an insured with a kidney injury whose condition consistently and predictably worsens over time, plaintiff's injury has resulted in sudden, unpredictable symptomatic episodes. And during those sudden

3

symptomatic episodes, plaintiff's seizure disorder causes him to unexpectedly lose consciousness and muscle control and fall down.

As the majority's analysis demonstrates, the intermittent nature of plaintiff's seizure disorder lends itself to the conclusion that any subsequent injury is caused by an intervening accident rather than the seizure disorder itself. Specifically, the majority focuses on the activity that plaintiff was engaged in when he suffered the 2008 seizure and concludes that the motorcycle accident was an intervening event that caused plaintiff's 2008 injury. However, once the nature of a seizure disorder is properly understood, I believe the majority's analysis is incorrect. Plaintiff's fall during his 2008 seizure was not an intervening cause; rather, it was an inextricable aspect of his seizure disorder, and any injuries sustained during the loss of consciousness and fall arose out of the motor vehicle accident that caused the seizure disorder. Simply put, loss of consciousness and falling down is part of a seizure. While I agree that the severity of the person's injuries may be exacerbated depending on what the person is doing at the time of a seizure, that does not change the fact that a seizure disorder caused the person to unexpectedly fall and suffer an injury. Stated differently, plaintiff's seizure disorder cannot be separated from his 2008 fall and attendant injuries in any meaningful way. Because plaintiff's fall was an inextricable aspect of his seizure, I believe that plaintiff can satisfy MCL 500.3105(1).

In summary, I think that the 2007 motor vehicle accident bore more than an incidental, fortuitous, or "but for" connection to plaintiff's 2008 injuries because plaintiff's 2008 injuries are directly related to the seizure disorder, i.e., the 2008 injuries

4

were an inextricable result of his seizure disorder. Accordingly, I dissent from the majority's decision to grant summary disposition in favor of Progressive.

Michael F. Cavanagh


VIVIANO, J., took no part in the decision of this case.