*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ILENE FERRIS,

Plaintiff-Appellant,

v

STATE FARM AUTOMOBILE INSURANCE
COMPANY,

Defendant-Appellee.

UNPUBLISHED
March 19, 2020

No. 345579
Wayne Circuit Court
LC No. 17-015351-NF

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Ilene Ferris appeals by right the trial court's order granting summary disposition in favor of defendant State Farm Automobile Insurance Company in this case involving a motor vehicle accident and plaintiff's effort to continue receiving personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.* The issue here is whether there exists a genuine issue of material fact with respect to whether plaintiff's alleged injuries arose out of the operation or use of a motor vehicle as required by MCL 500.3105(1). We reverse and remand for further proceedings.

The accident occurred when plaintiff was operating her van on April 18, 2015. Plaintiff's vehicle was struck on the driver's side by a hit-and-run driver while plaintiff was stopped at a red light. Plaintiff, who was 68 years old at the time and wearing her seatbelt, was thrown out of her seat by the violent impact, which caused the seatbelt to break. Plaintiff was knocked into the front passenger side of her van where the right side of her body hit crates full of tools that plaintiff was hauling. According to the traffic crash report, plaintiff did not claim any injuries at the scene and was able to drive away in her damaged vehicle.[1] The following day, April 19th, plaintiff went to the hospital complaining "of multiple pains following [the] motor vehicle collision." The hospital

---

[1] The crash report contained a numerical evaluation regarding the extent of the damage to plaintiff's van, placing the damage at a "4." But the report did not identify the nature or extent of the scale used by the officer.

records indicated that plaintiff did "sustain injury to her right shoulder and right knee." These documents also reflected that plaintiff complained of spinal pain. Plaintiff was "placed in a soft cervical collar for comfort" and referred to "Dr. Drouillard in orthopedics for repeat evaluation and possible MRI of [the] shoulder . . . ."

Dr. Drouillard examined plaintiff and her records from the hospital and concluded that while plaintiff suffered "multiple contusions, sprains, and strains," her complaints of discomfort and pain were the result of degenerative disc and joint disease. Dr. Drouillard opined that none of plaintiff's spine or joint ailments were "traumatically induced." Dr. Drouillard prescribed pain and anti-inflammatory medication and physical therapy. He also recommended "home care services for two weeks [for] two to four hours a day." Plaintiff visited Dr. Drouillard again after MRIs were performed, and he offered the following diagnosis:

> It was my impression that she had, number one, degenerative cervical spine stenosis C5 to C7. That she had a rotator cuff tear in her right shoulder with degenerative joint disease in the right AC joint. That she probably had a rotator cuff tear in her left shoulder with degenerative disease in the AC joint. And that she had degenerative spinal stenosis L3 to L5.

Dr. Drouillard denied the existence of a causal connection between the conditions described in the preceding passage and the motor vehicle accident. Dr. Drouillard concluded that all of plaintiff's physical complaints were caused by degenerative changes unrelated to the accident.

Plaintiff next visited a radiology center where she was treated by Dr. Ayman Tarabishy. On September 22, 2015, Dr. Tarabishy examined plaintiff. Dr. Tarabishy noted that plaintiff complained of "neck pain radiating down the upper right extremity," which "started soon after the accident and gradually started getting worse." Plaintiff also complained of "low back pain radiating down the right lower extremity," which, like the neck pain, began after the accident and was becoming worse. Dr. Tarabishy observed that plaintiff's "electrodiagnostic studies" were "abnormal" and were "suggestive of bilateral C6 and C7 worse on the right, along with bilateral L4 and L5 worse on the right radiculopathies." The review of plaintiff's MRI demonstrated "degenerative changes" in her cervical spine and "disc ossified complex" in plaintiff's lumbar spine. Dr. Tarabishy concluded that plaintiff suffered from: (1) "[c]ervical radiculopathy"; (2) "[c]ervical whiplash and facet arthropathy"; (3) "[c]ervical stenosis with early features of myelopathy and central cord syndrome"; (4) "[r]ight olecranon bursitis"; (5) "[r]ight rotator cuff tear"; (6) "[r]ight knee contusion"; (7) "[l]umbar radiculopathy"; (8) "[b]ilateral carpal tunnel syndrome"; (9) "[l]umbar spine stenosis with neurogenic claudication"; and (10) "[p]ost traumatic headache and facial numbness."

Dr. Tarabishy acknowledged at his deposition in April 2018 that cervical radiculopathy, cervical degeneration, canal stenosis, and disc osteophyte complex are not conditions that are "always traumatically induced." Dr. Tarabishy could not "say with a reasonable degree of medical certainty that [plaintiff's] injuries were caused by" the accident. He explained, however, that while there "definitely [were] some degenerative changes on her MRIs," he could not conclude that all of plaintiff's changes were merely degenerative. According to Dr. Tarabishy, plaintiff's ailments "might have been flared up, caused, [or] worsened" by the accident, but he could not say that such was definitely the case. Dr. Tarabishy testified that it was possible that plaintiff's injuries were

sustained in the automobile accident—"not the degenerative changes, but obviously the disc bulges." When asked whether he connected plaintiff's injuries to the car accident, Dr. Tarabishy responded that plaintiff "had no complaints of this sort prior to her accident, and that she was functional . . . prior to her accident." He further explained:

> Well, arthritis—according to the patient, she had no symptoms prior to the accident. You can have arthritis and disc degeneration on MRI and be symptoms free. So just having degenerative changes doesn't necessarily mean that all the symptoms are degenerative. And having degenerative changes—trauma on top of degenerative changes, it's more likely for you to have worse symptoms and worse feeling.

> But can I tell you this is all from the accident? I can't tell you that. There's a—according to the patient, she had no complaints prior to the accident, and she started having them after the accident.

On July 27, 2017, after having paid PIP benefits to or on behalf of plaintiff for quite some time, State Farm sent plaintiff a letter notifying her that further benefits would be denied. On October 23, 2017, plaintiff filed her complaint against State Farm, alleging that State Farm failed to pay PIP benefits in violation of her policy and MCL 500.3148. On May 14, 2018, State Farm moved for summary disposition under MCR 2.116(C)(10), arguing that there was no evidence that plaintiff's injuries or ailments were caused by the April 2015 car accident. State Farm maintained that neither Dr. Drouillard nor Dr. Tarabishy could state "with a reasonable degree of medical certainty that Plaintiff's injuries were caused by the accident." Plaintiff responded, acknowledging that Dr. Drouillard's medical opinion was that plaintiff's complaints of pain were not caused by the accident.[2] According to plaintiff, however, Dr. Tarabishy concluded that plaintiff's asymptomatic conditions were "aggravated" by the accident, resulting in symptoms of pain and limited functioning. Plaintiff also pointed to the fact that, as evidenced by a document authored by Dr. Tarabishy, her treating physicians had connected her injuries to the accident.[3]

---

[2] Plaintiff claimed in her response brief that Dr. Drouillard was "a very pro-Defendant expert witness" who had "been conducting independent medical examination[s] on behalf of insurance companies for quite some time, performing well over a thousand a year on a consistent basis."

[3] In a pre-deposition letter by Dr. Tarabishy dated August 31, 2017, which was addressed to whom it may concern, the doctor noted that plaintiff had been seen by "multiple board-certified physicians" at the radiology center and that he had consulted with "reputable surgeons" regarding plaintiff. Dr. Tarabishy then stated:

> The consensus amongst these physicians has been that [plaintiff's] injuries are within a reasonable degree of certainty more than likely caused by the accident[;] she sustained marked injuries verified by MRI testing, she underwent cervical spine surgery and shoulder surgery, [and] her injuries are not self-limiting soft tissue injuries. [Plaintiff] is more than likely going to be a chronic pain patient for the rest of her life, and to continue to need some assistance physically. Full

On July 12, 2018, the trial court conducted a hearing on State Farm's summary disposition motion. Ruling from the bench, the trial court granted the motion, reasoning that plaintiff did not "present[] evidence that her medical conditions [were] related to the accident or were aggravated by the accident." On July 31, 2018, the trial court entered an order granting State Farm's motion for summary disposition, concluding that "there is no genuine issue of material fact that Plaintiff's injuries and medical treatment were not caused and/or related to the April 18, 2015 motor vehicle accident."

Plaintiff moved for reconsideration on August 1, 2018. In her motion, plaintiff argued that Dr. Tarabishy's testimony was improperly considered as a basis for summary disposition because it was taken from a "discovery-only" deposition and was therefore inadmissible. Plaintiff also maintained that the trial court utilized an improper burden of proof relative to causation, i.e., the "reasonable degree of medical certainty" standard. Lastly, plaintiff contended that the trial court erred when it ignored plaintiff's medical records, which indicated that her physicians found that her injuries were causally connected to the accident. The trial court denied plaintiff's motion for reconsideration on August 31, 2018. This appeal ensued.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo the interpretation of a statute. *Estes v Titus,* 481 Mich 573, 578-579; 751 NW2d 493 (2008). Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. A court may only consider substantively admissible evidence actually proffered by the parties. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "Like the trial court's inquiry, when an appellate court reviews

recovery is not anticipated given the extent of her auto related injuries and her advanced age. Prior to her accident[, plaintiff] was functional, independent, had no chronic pains, and did not need physical assistance.

\* \* \*

In summary, [plaintiff] sustained multiple injuries from her accident that are more than likely going to lead to chronic pain and physical limitations.

a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

In *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 531; 937 NW2d 380 (2019), this Court recited the core principles of statutory interpretation:

> When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent, the most reliable indicator of which is the clear and unambiguous language of the statute. Such language must be enforced as written, giving effect to every word, phrase, and clause. Further judicial construction is only permitted when statutory language is ambiguous. When determining the Legislature's intent, statutory provisions are not to be read in isolation; rather, they must be read in context and as a whole. [Quotation marks and citations omitted.]

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). "[A] no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). Not just any bodily injury triggers an insurance company's liability under the no-fault act; rather, only those injuries that are caused by the use of a motor vehicle are compensable. *Id.* "[T]he causal connection between the injury and the use of the motor vehicle [must be] more than incidental, fortuitous, or 'but for.' " *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578, 582; 751 NW2d 51 (2008) (quotation marks and citation omitted). But a showing of direct or proximate causation is not required. *Id.* at 584. Instead, "[a]lmost any causal connection will do." *Id.* at 586.[4] In addition, "the use of the motor vehicle need only be one of the causes of the injury; there may be other independent causes." *Id.* at 585. "[A]n injured party may recover if he can demonstrate that the accident aggravated a pre-existing condition." *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985).

Keeping in mind that any causal connection suffices if it is more than merely incidental or fortuitous, that a showing of direct or proximate causation is not necessary, that there may be other independent causes of an injury, and that a "reasonable degree of medical certainty" is not the applicable causation standard, we hold that a genuine issue of material fact exists regarding whether the motor vehicle accident aggravated plaintiff's preexisting conditions or caused her injuries. We initially note that we are not addressing statutory demands comparable to those to

---

[4] On application for leave, our Supreme Court originally vacated this specific legal proposition set forth in *Scott*. 482 Mich 1074 (2008). But on reconsideration, the Supreme Court vacated that aspect of its prior order and denied leave in full without exception. 483 Mich 1032 (2009). In *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 497; 892 NW2d 467 (2016), this Court reiterated that "the phrase 'arises out of' does not mean proximate cause in the strict legal sense; rather, almost any causal connection will suffice if it is more than merely incidental or fortuitous." State Farm relies on caselaw that examines the question of causation in general instead of in the context of the "arising out of" language in MCL 500.3105(1).

-5-

show a serious impairment of body function for purposes of recovering noneconomic damages arising out of a motor vehicle accident. See MCL 500.3135. That distinct standard requires proof of an *objectively-manifested* impairment, "meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." MCL 500.3135(5)(a).

Dr. Drouillard's testimony, in and of itself, would plainly not allow plaintiff's case to go forward. Dr. Drouillard opined that plaintiff's complaints of pain and discomfort were wholly the result of degenerative disc and joint disease absent any impact by the accident. Dr. Tarabishy, on the other hand, effectively indicated in his deposition that some of plaintiff's physical conditions and changes could have been caused by the trauma involved in the accident and were not necessarily degenerative only. But he also acknowledged the possibility that they were degenerative and not traumatically induced. Dr. Tarabishy did explain that with trauma on top of degenerative changes, "it's more likely for you to have worse symptoms and worse feeling." Recall that plaintiff was 68 years old when the crash occurred. It becomes quite evident from the record that Dr. Tarabishy ultimately relied on plaintiff's assertions that she had no pain or discomfort and could function independently before the accident and that her physical ailments and problems only developed after her van was t-boned. We construe Dr. Tarabishy's position and opinion in this case to be that the medical testing and imaging could indeed support a determination that the accident caused some of plaintiff's injuries or aggravated preexisting conditions—*they did not rule out those possibilities*. And, given the fact that plaintiff allegedly had no such physical complaints before the accident, Dr. Tarabishy believed that plaintiff's injuries and conditions could be linked or attributed to the accident.

Because Dr. Tarabishy opined that the medical evidence revealed physical changes and conditions that could have been the result of the accident and were not necessarily all degenerative in nature, and because the medical records reflected that plaintiff had no complaints of pain or functionality problems until after the accident, a reasonable trier of fact could logically conclude that there was a causal connection between the car accident and at least the aggravation of plaintiff's preexisting degenerative conditions.[5] Nothing in the plain language of MCL 500.3105(1) precludes consideration of a plaintiff's subjective claims regarding his or her physical condition and sensations before and after a motor vehicle accident for purposes of establishing the required causal connection. And a trier of fact can assess the veracity of a claim. When Dr. Tarabishy's opinions and views are considered in conjunction with the evidence of plaintiff's medical history of pain and discomfort before and after the accident, all as examined in a light most favorable to plaintiff, we conclude there was sufficient evidence to create a genuine issue of material fact regarding whether plaintiff suffered bodily injuries arising out of the operation or use of a motor vehicle. As reflected by our discussion, we reach this holding without considering the letter by Dr. Tarabishy quoted in footnote 3 of this opinion and accepting Dr. Tarabishy's deposition testimony as moderating his written statements or findings. Accordingly, we need not

---

[5] We additionally note that there does not appear to be any dispute that plaintiff did experience some level of physical harm as a result of the accident, where even Dr. Drouillard found that plaintiff had suffered "multiple contusions, sprains, and strains."

address plaintiff's arguments on those matters, including her contention that Dr. Tarabishy's deposition was a discovery-only deposition that could not be considered for purposes of summary disposition.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, plaintiff may tax costs under MCR 7.219.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle